## RINGGOLD COUNTY v. ALLEN ET AL.

1. **Contract:** SWAMP LANDS: BOARD OF SUPERVISORS. The board of supervisors of a county appointed a special agent to settle its swamp land claim with the general government and receive the money thereon; they also made a contract with B to prosecute said claim for which he was to receive a sum certain for expenses and half of the balance received from the general government; after the special agent had received the amount due the county he paid B therefrom, according to the terms of the contract, and also settled with a committee appointed by the board: *Held,*

    1. That the county was not entitled to recover of the agent the amount he had paid B.

    2. That the county could not complain of the payment to B, if it received all that it was entitled to under the contract.

    3. That the acceptance and ratification of the report of the committee operated to discharge the special agent.

    4. That authority given the committee to settle "in compliance with the contract" authorized them to approve of the payment made to B by the special agent.

*Appeal from Clark District Court.*

DECEMBER, 5, 1871.

ACTION upon a bond given by B. F. Allen, who had been appointed agent to receive swamp land money for said Ringgold county from the State Treasurer, as principal, with F. R. West as surety.

The penalty of the bond was thirty-five thousand dollars; the amount the plaintiff claimed was $16,737.62, with interest from July 27, 1867; and the jury upon the trial found a verdict for plaintiff for $8,168.82, with interest as claimed.

The defendants appeal. The further facts are stated in the opinion.

*Nourse & Kauffman,* and *Withrow & Wright,* for appellants.

*Barcroft, Gatch & Hammond, Mount & Anderson,* and *Laughlin & Keller,* for appellee.

COLE, J.—There is no conflict in the testimony, and it establishes substantially these facts:

That in April, 1863, the board of supervisors of Ringgold county nominated, and the Governor of the State appointed, F. C. D. McKay a special agent to settle the swamp land claim of the county with the General Government, under Sec. 13, Chap. 160, of the Acts of Ninth General Assembly, and on the same day entered into a contract with T. E. Brown for the prosecution and collection of the swamp land claim of said county; but said contract is not in evidence, nor are its terms disclosed further than that after deducting one thousand dollars for expenses, etc., from the gross receipts, the balance should be divided equally between Brown and the county. That the said McKay having deceased, the board of supervisors appointed B. F. Allen agent to receive the swamp land money for said county from the State Treasurer, and on the 4th day of April, 1867, he executed the bond sued on, with F. R. West as his surety. On the 24th day of April, 1867, said Allen received of the State Treasurer the sum of sixteen thousand, four hundred and two, and eighty hundredths dollars, swamp land fund for Ringgold county.

On the 22d day of July, 1867, the board of supervisors, in special session, adopted the following resolution:

"*Resolved*, by the board of supervisors of Ringgold county:

Whereas, the county of Ringgold entered into a contract with T. E. Brown on the 25th of April, 1863, for the prosecution and collection of the swamp land claim of said county; and,

Whereas, at the same time the said county did nominate F. C. D. McKay a special agent for said county to receive all proceeds of said claims as the same should be collected; and,

Whereas, there has been collected and adjusted of said claim to this date, the sum of sixteen thousand, seven hundred and thirty-seven dollars and sixty-two cents of cash indemnity, and four thousand nine hundred and sixty-three acres of scrip indemnity;

Now, therefore, the county of Ringgold does hereby appoint and constitute John D. Carter and Josiah Vorhies their

agents and attorneys and legal representatives, with full power to settle with said T. E. Brown, or his assignees, or legal representatives, and receive the proceeds of said contract, whether it be in money or land scrip; and we do hereby authorize the said John D. Carter and Josiah Vorhies to receipt, in the name of Ringgold county and in their behalf, for all money and swamp land scrip that may have been obtained on said claim, and the said county hereby ratifies and approves such settlement, when made in compliance with the said contract between the county and T. E. Brown;" and the board appropriated fifty dollars from the funds of the county to defray the expenses of such agents.

That on the 27th day of July, 1867, the agents of said county, Carter and Vorhies, who were members of the board of supervisors, having repaired to Des Moines, met there Jas. C. Savery, who acted for Brown and Allen, and made a settlement with him as follows:

Statement of cash indemnity for swamp lands in Ringgold county sold by United States:

Amount of draft received from United States..... $16,737.62
By terms of contract with county the amount to go
      to purchaser.............................. 1,000.00
Leaving for equal division .................... 15,737.62

The receipt, as hereinafter given, being a copy, will show in what manner the portion going to the county was disposed of:

The amount received by purchaser as follows ......$1,000.00
One-half of $15,737.62........................ 7,868.81

And the said agents received the money mentioned in, and gave, the following receipt:

"$7,568.80. Received of B. F. Allen, special state swamp land agent for Ringgold county, seven thousand, five hundred and sixty-eight and eighty hundredths dollars, the same being in full payment and satisfaction of the cash payment realized out of the claim on the United States for Ringgold county up to this date; and we agree, for said county, to deed or cause to be deeded to the parties entitled to it, the land procured

with the scrip, mentioned and described in the contract, as going to T. E. Brown, so soon as the title can be confirmed to the said county. Three hundred dollars has been reserved from that portion of the amount going to said county, for the payment of the county's *pro rata* for locating the scrip and perfecting the title to the lands, which three hundred dollars is to be adjusted between the county and the said Brown as soon hereafter as the actual expense shall be known.

(Signed,)      JOHN D. CARTER,

JOSIAH VORHIES."

And at the same time T. E. Brown gave the following:

"Received, July 27, 1867, of B. F. Allen, special swamp land state agent for Ringgold county, eight thousand eight hundred and thirty-four dollars and seven cents, being the amount due me and my assignees, as per settlement with John D. Carter and Josiah Vorhies on behalf of Ringgold county, for money due upon contract with said county, and paid by the agreement of said committee. The above includes the sum of three hundred dollars, reserved from that portion of the money belonging to the county, to pay the county's *pro rata* for locating the land to be located with swamp land scrip, as per Brown contract.

(Signed,)      T. E. BROWN."

Upon their return home the said agents paid the money into the county treasury, and made the following report, accompanied with a copy of the foregoing statement of settlement and of their receipt to Allen, to-wit: "We, the committee appointed to settle the swamp land indemnity claim of Ringgold county, would report as follows: That from the fact that Ringgold county holds the entire claim for certain land, or land scrip, and we not being ready on our part to transfer to the proper person their portion of land, as per contract, we could not make a full settlement, but we made a partial settlement, for which see papers now on file.

(Signed,)      JOHN D. CARTER,

JOSIAH VORHIES."

And at the September meeting, 1867, of the board of super-visors of said county, "the report was accepted and the com-mittee discharged." It also appears that the matter referred to as partial settlement related to certain land scrip and the expense of locating the same, there being over four thousand acres of it, and also that the "purchaser" mentioned in the paper was T. E. Brown.

The court instructed the jury at considerable length, and so far as regards the first twelve instructions, with entire correct-ness.

Among these, that the jury have nothing to do with the question, whether the contract with Brown was just and legal, or whether the county ought to have paid him the amount he received under his contract; that the receipt of Brown offered in evidence is conclusive on the question of payment to Brown, in the absence of any evidence to impeach it; that the report of the committee, if ratified and received by the board of supervisors, is the discharge of Allen, and if the jury find from the evidence that a copy of the receipt given by Carter and Vorhies to Allen was filed with their report to the board, as a part of said report, and that the board accepted said report, then they must find for defendant, in the absence of fraud or mistake, and there is none alleged or claimed in the case.

Upon the foregoing facts and instructions, together with other instructions to be hereinafter considered, the jury found a verdict for plaintiff for $8,168.82, with interest from July 27, 1867, at six per cent.

The defendant moved to set aside the verdict and for a new trial, on the ground that the verdict was contrary to the evi-dence and instructions, and also for error in the instructions, and other grounds. The court overruled the motion, and rendered judgment on the verdict. The ruling is assigned as error. We think the verdict clearly contrary to the evidence and instruction, and that the court erred in not sustaining the defendant's motion to set the same aside. It is not necessary to do more than refer to the facts above set forth to show this error.

But the court also instructed the jury as follows: 13. "The defendant, Allen, would have no right to pay any por-

tion of said funds to T. E. Brown, unless he had authority from the board of supervisors or their committee, and if he paid said money to said Brown, without authority from the board of supervisors or their committee, such payment would be no defense to the claim; but if he had such authority, and paid it under such, it would be a defense."

This instruction is vulnerable to several objections. It must be immaterial to the plaintiff, whether Allen has paid Brown at all, or if he had, whether he did so, either with or without plaintiff's authority, if, according to the contract between Brown and the county, the plaintiff had got all it was entitled to.

Again, the court had already instructed the jury that, if the board had received and ratified the report of the committee, it was the discharge of Allen; and upon that question there was no conflict in the evidence; and further, if Brown was entitled to the money under his contract, about which there is no question in this case, and the committee or agents being directed to make the settlement "in compliance with the contract," such direction became authority from the board of supervisors to make such payment to Brown, and there was no evidence contradictory of this, and hence nothing on which to base the instruction.

The court further instructed the jury as follows: "14. A county is not bound by the unauthorized acts of its agents and officers, and the board of supervisors of this plaintiff would have no authority by itself or committees to settle with Allen on any other basis than a full accounting for all money in his hands, and either the payment to the plaintiff of the full sum due, or its payment to such person or persons as the board or its committee should direct, after settlement with such person or persons."

This instruction is liable to the same objection as the last, and also to the further one of making the jury judges of the law, to determine whether some undefined act was "unauthorized" by the law. Both were erroneous and misleading, and under the evidence in this case, neither should have been given. The judgment is    .   .   .   **REVERSED.**