## THE COUNTY OF FRANKLIN
## v.
## THOMAS J. LAYMAN ET AL.

*Attorney and Client—Conditional Contract under Which Plaintiffs Were to Test Legality of Bonds—Power of County Board to Employ Counsel—Instructions—Order of Reading of.*

1. Under the statutes of the State, the board of supervisors of a county has power to employ counsel to defeat collection of a tax levied to pay bonds of the county, where it is desired to procure a final adjudication upon the validity of such bonds; and the fact that the county is not a nominal party to the suit to be brought is immaterial.

2. An instruction which assumes the existence of a material contract, the execution of which is in dispute, is erroneous.

3. In the absence of a contract, county boards have no power to pay county funds for liabilities incurred by private individuals, although it may be shown that the matter about which the liability was incurred enured to the benefit of the people of the county.

[Opinion filed March 19, 1890.]

APPEAL from the Circuit Court of Franklin County; the Hon. GEORGE W. YOUNG, Judge, presiding.

This suit was brought by appellees to recover for professional services claimed to have been performed by them for the appellant in proceedings to test the validity of certain county bonds, issued by said county under and by virtue of the provisions of the act of 1861 chartering the Belleville & El Dorado Railroad Company. Two series of bonds were issued to the company by the county, one of one hundred bonds for $1,000 each, being the bonds above referred to, and the other series of forty-nine bonds for $1,000 each, issued under the authority of the Railroad Act of 1849. On May 22, 1880, the parties entered into a written contract, by the terms of which appellees agreed to commence and prosecute to a final hearing and determination without unreasonable delay, proper suit or suits against the holders and other

County of Franklin v. Layman.

proper persons, of said $149,000 of bonds, for the purpose of testing the validity thereof and the liability of the county for their payment; $250 to be paid appellees when suit was commenced, and if the suit or suits were finally determined in favor of the county and said bonds were held to be illegal, void, and not collectible from the county, then $8,000 additional to be paid appellees; but if said suit be not decided in favor of the county and sustained in the courts, then nothing more than $250 to be paid.  By the contract appellees were required to make application, and if possible, procure injunction, preventing collection of taxes and payment of interest on said bonds.  Under this contract appellees filed a bill on behalf of the county, and at the October term, 1880, of the Franklin Circuit Court, obtained a decree perpetually enjoining the collection of taxes to pay interest on said bonds, and declaring all of them void.  Some time thereafter, upon the petition of certain holders of part of the bonds, the decree was opened and the cause was transferred to the Federal Circuit Court, and in that court a decree was entered, declaring thirteen of the $49,000 series of bonds and coupons void, and the injunction made perpetual as to said thirteen bonds, without prejudice to the holders of the remaining thirty-six bonds of that series, and it was further decreed the other series of bonds for $100,000, issued under the act of 1861 were valid, and as to them the injunction was dissolved.  This result appellees reported to the county board and offered to take and conduct an appeal from the decree, on behalf of the county, to the Supreme Court of the United States.  This offer was declined, but in July, 1883, by a resolution of the county board, appellees were authorized to, and did file a bill in the Franklin Circuit Court to enjoin the collection of the thirty-six bonds of the series declared to be void by the decree of the Federal Court, and at the October term, 1883, of said Circuit Court, procured a decree declaring said thirty-six bonds void.

From this decree no appeal has been taken, nor has any writ of error ever been sued out to reverse it.  The German Savings Bank, holder of nine of these bonds, and a party to

the suit in the Federal Court, prosecuted an appeal to the United States Supreme Court, from that part of the decree of the Federal Court declaring said nine bonds void. On the trial of that appeal, appellees appeared and filed briefs on behalf of the county, and that part of said decree was affirmed. The $49,000 series of bonds were thus finally disposed of, and for their services in that behalf, appellees settled with appellant and were paid $2,634.24 in full satisfaction, but claim the right to recover $5,365.76, the amount of the judgment below, as a balance unpaid of the $8,000 named in said written contract, and due them for professional services performed for appellant in proceedings which resulted in a decree declaring void the $100,000 of bonds issued under the act of 1861.

Mr. F. M. YOUNGBLOOD, for appellant.

A county can make no contract except such as is expressly authorized by statute, or the power to make which is necessarily implied from the authority given, and no statutory authority can be found for making the Richeson contract. Chicago v. Turner, 80 Ill. 419; Commissioners v. Newell, 80 Ill. 587; Bouton v. Supervisor, 84 Ill. 384; Law v. People, 87 Ill. 385; Fridley v. Bowen, 87 Ill. 151; Gaddis v. Richland Co., 92 Ill. 119; Cook County v. McCrea, 93 Ill. 236; Zanone v. Mound City, 103 Ill. 552; Harris v. Board of Supervisors, 105 Ill. 445; Scates v. King, 110 Ill. 456; Locke v. Davidson, 111 Ill. 19; Sexton v. Cook County, 114 Ill. 174.

Messrs. W. J. N. MOYERS, CARROLL PAYNE and S. P. WHEELER, for appellees.

GREEN, J. We are satisfied, from an examination of the record, that the right to recover this balance rests upon a contract between appellant and appellees, alleged to have been made November 7, 1883, and which contract, according to the testimony on behalf of appellees, was made with the county board while in session, and by the agreement of said board was to have been recorded in the proceedings of that meeting, but was not so recorded. The terms of this contract

County of Franklin v. Layman.

were, if taxes were assessed to pay interest on said $100,000 series of bonds, and if Richard Richeson, or some other taxpayer of the county would resist the payment of the taxes in the County Court, and appellees should there appear and attend to the suit, and the case was appealed to the Supreme Court of the State, if that court, upon the hearing of such appeal, should render a decision to the effect that said $100,000 of bonds were issued without authority of law, or were void, that the county would then, in consideration of the services appellees had rendered for the county in the County Court, in the Franklin Circuit Court, and the Federal Circuit Court, and in consideration of the benefits the county would receive by the bonds being declared void in the suit through Richeson, or some other taxpayer, pay appellees the balance, amounting to $2,365.76, on the $8,000 remaining after deducting the amount of $3,634.24 previously paid.

In pursuance of this contract, as is claimed on behalf of appellees, they filed objections on behalf of Richeson to the rendition of a judgment for taxes levied to pay interest upon said series of bonds, and at the May term, 1885, of the County Court, the objections were heard and overruled. From that judgment Richeson appealed to the Supreme Court. Appellees appeared for him there, and by the judgment of that court said bonds were declared to be invalid and void. That judgment remains in full force, and the record in this cause shows that appellant availed itself of the benefits thereof, and no tax has been levied since to pay interest on these bonds.

On June 7, 1886, appellees presented to the county board their claim for these professional services, amounting to $5,365.74, with their affidavit showing its correctness, but the claim was not allowed or paid. The verdict and judgment was for the amount of this claim.

The 1st error assigned is overruling demurrer to the second count of the declaration. We think this count averred a good cause of action, hence the 2d error assigned, "refusing to carry back demurrer to defendant's pleas to said second count," is also not well assigned. The 3d error assigned is the admission of improper evidence on behalf of appellees. Enter-

taining the view we do of the contract alleged to have been made November 7, 1883, we discover no error under this assignment requiring a reversal. The 4th, 5th, 6th and 7th assignments of error relate to instructions, and, so far as we deem it necessary, will be referred to hereafter. The 8th and 9th assignments of error challenge the propriety of the court's action in a conversation held with the jury when they asked for some further instructions, and in reading the instructions given, in the order as shown by the record. As to the last objection, we desire to say it is the proper practice to read all the instructions given for plaintiff, and then all those given for defendant, instead of reading an instruction for plaintiff and then an instruction on behalf of defendant, alternately, as was done by the court in this case; but we discover nothing to justify even criticism in the conversation complained of.

The 13th error assigned is, entering judgment on the verdict, and the 14th that the verdict of the jury was against the evidence. These include and cover all that is material in the 10th, 11th and 12th assignments of error. It is insisted under these assignments, that the contract of November 7, 1883, above mentioned, even if proven to have been made, was *ultra vires* and not binding upon the county because in the proceedings to test the validity of the $100,000 series provided by the contract, it was not stipulated the county should be *party plaintiff or defendant*, but Richeson or some other taxpayer of the county; and because the contract provided for the payment of a contingent fee for professional services, employed *to defeat the collection of a tax charged on a State assessment.* P. 24, clause third, Chap. 34, Starr & Curtis' Stat., provides, each county shall have power, " to make all contracts and do all other acts in relation to the property and *concerns* of the county necessary to the exercise of its corporate powers." P. 23 provides that the county board can exercise the powers granted to the county as a body corporate or politic. In the exercise of the power " to do all other acts in relation to the concerns of the county," the county board could lawfully take steps to defeat the collection of a tax assessed to pay an apparent, but in fact an illegal debt of

the county, and procure a final adjudication declaring void and invalid said bonds, to pay the interest upon which such tax was assessed, and thereby relieve the taxpayers of the county from an unjust and illegal burden. A contract made for this purpose was within the object and spirit of the statute, and we see no good reason to hold *the mode* adopted to test the validity of the bonds, was forbidden by law, or was improper.

" A thing which is within the object, spirit and meaning of the statute, is as much within the statute, as if it were within the letter." Potter's Dwarris on Stat., 179.

Holding this contract not invalid, or against public policy, we would not disturb the verdict of the jury had they been properly instructed. But there was a conflict of evidence as to the fact whether or not the contract of November 7, 1883, was made, and by plaintiffs' fourth instruction the jury were informed, " If you believe from the evidence that the Supreme Court of the United States passed upon the validity of a part of the one hundred and forty-nine bonds mentioned in this suit, and held the same to be invalid, then the validity of all of said series of bonds, and the liability of said county for their payment has been tested, and you should find for the plaintiffs in this suit, in such an amount as you may believe is warranted by the evidence."

This instruction ignored the question of fact, the making of the said contract. and in effect informed the jury, plaintiffs can recover if the United States Supreme Court declared the nine bonds of the $49,000 series invalid, even if no contract was made between the parties on November 7, 1883, as claimed. This instruction was probably based upon the theory that the authority to issue both series of bonds rested upon the same vote, and they were issued on the same day and under the same conditions and circumstances; hence, if any part of either series were declared void by said court because of the non-performance of some conditions precedent by the railroad company, the balance, being subject to the same objection, were necessarily void, and appellees having appeared on behalf of the county and filed a brief and rendered services in the Supreme Court of the United States

in the cause in which said nine bonds were adjudged void, became thereby entitled to additional compensation, because *the effect* of the decision was to declare all the bonds of both series bad.

This theory we are not prepared to adopt, nor can we hold appellees were entitled to recover anything in this suit under the written contract of May 22, 1880; but as before said, their right to recover rests upon the alleged contract of November 7, 1883.

The court erred in modifying, and as modified, giving the jury, defendants' third instruction. We do not understand the law to be as there declared, that county boards, in the absence of any contract, can lawfully pay out county funds *for liabilities incurred by private individuals,* where it is shown by the evidence, "the matter about which the private individual incurred such liabilities, inures to the benefit of the people of the county represented by its county board." For the error in giving the fourth instruction for plaintiffs, and the defendants' third instruction as modified, the judgment is reversed and the cause remanded.

*Reversed and remanded.*