[No. 5097.]<br>
[No. 2673 C. A.]

## Chase et al. v. The Board of County Commissioners of Boulder County.

1. **Taxes and Taxation—County Commissioners—Contracts Ultra Vires—Statutory Construction.**

By § 3816 of Mills' Ann. Stats., the county assessor is required to submit to the county commissioners a complete assessment of his county; by § 3824 he shall, upon discovery, assess

any property which has been concealed, removed, transferred or misrepresented by the owner; by § 3820 he shall, when discovered, assess all property which, for any reason, has been omitted for any year or series of years; by § 902 the county treasurer is made collector of taxes; by § 903, where the assessor has failed to assess and place upon the tax roll any property, the county treasurer may make the assessment and extend the tax; by § 3852 it is made the duty of the county treasurer to collect taxes, by other sections he is given the power to collect by distraint and sale, and in proper cases, it has been the practice for him to bring suit in his official capacity where no other method is available. Held, since the express power to discover omitted unassessed property resides in the county assessor and county treasurer, and no express power whatever has been given to the county, in its corporate capacity, with respect to assessing or collecting taxes, that no implied power is given the board of county commissioners, as a corporate body, to discover omitted property or to make a valid contract with others to do so, and such a contract is ultra vires.—P. 278.

2. **Taxes and Taxation—Contracts—Incapable of Enforcement —Proper Parties.**

Plaintiffs' assignor entered into a contract with a board of county commissioners to discover and report for assessment all property which for any reason had been omitted in previous years, and the board agreed to pay him a commission upon the amount of taxes received, as the result of his efforts, when the same should be paid into the treasury. The county assessor and county treasurer refused to assess the property discovered, and plaintiffs brought this action for a breach of such contract. Held, since neither the assessor nor the treasurer is a party to, or bound by, such contract, and since such property must first be assessed by the assessor and the tax collected by the treasurer, and the assessor is vested with a quasi-judicial power in making deductions and in estimating the value of property for taxation, that the impossibility of ascertaining either the valuation of the omitted property, or the amount of tax that would be collected, renders such contract absolutely incapable of performance.—P. 282.

*Error to the District Court of Fremont County.*
*Hon. Morton S. Bailey, Judge.*

Action by J. O. Chase and D. B. Chapin against the board of county commissioners of Boulder county.

From a judgment for defendant, plaintiffs bring error.                                        *Affirmed.*

Mr. RALPH E. ESTEB, Mr. JOHN R. WOLFF and Mr. JOSEPH H. MAUPIN, for plaintiffs in error.

Mr. HARRY P. GAMBLE (Messrs. DOWNER & HAWKINS, of counsel), for defendant in error.

The board of county commissioners of Boulder county entered into a written contract with one Charles P. Fant, a citizen of El Paso county, whose rights under the same were assigned to plaintiffs, whereby Fant agreed to discover and report to the board, or to the county treasurer or county assessor, for assessment, all property which had been for any reason theretofore omitted from taxation in the county, for which services the board agreed to pay him a commission of 25 per cent. upon the amount of taxes which the county received as the result of his efforts, only when the same was actually paid into the county treasury. The board refused to carry out the contract, whereupon plaintiffs, as Fant's assignees, brought this action for the breach, and in their complaint alleged performance by them, and, had the county performed its part of the agreement, they would have been entitled to commission in excess of seventy-five thousand dollars. The trial court sustained defendant's demurrer to the complaint, and entered judgment dismissing the action, from which plaintiffs are here with this writ of error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

There is no claim that the county, in its corporate capacity, has express power to make such a contract, or that the general assembly has conferred upon it any express power, or laid upon it any duty, in the matter of assessing property or collecting taxes.

But plaintiffs assert that the board of commission-
ers, as the representative of the county, had the
implied power to make this contract. The sections
of the statute upon which they rely are sections
776, 774 and 791, 1 Mills' Ann. Stats. By the first
of these sections it is provided that the powers of
a county as a body politic shall be exercised by a
board of county commissioners; by the second the
county is vested with power "to make all contracts,
and do all other acts in relation to the property and
concerns necessary to the exercise of its corporate
or administrative powers;" and by the third, the
board is vested with the power "To represent the
county and have the care of the county property and
the management of the business and concerns of the
county, in all cases where no other provision is made
by law."

In general, it may be said that, under our scheme
of state government, the board of county commis-
sioners sustains towards the county a relation similar
to that which the general assembly bears to the state.
There is, however, this difference in their powers:
The general assembly, under our constitution and
except as limited therein, or by the federal constitu-
tion, has, with respect to legislative matters, plenary
power, while the board of county commissioners
possesses only such power as is expressly conferred
upon it by the constitution or statutes of the state,
and such implied power as is reasonably necessary to
the proper execution of its express power.

It is conceded by plaintiffs that, if the power and
duty of discovering omitted assessable property for
the purposes of assessment and taxation is by statute
committed to some other public officer, this contract,
by which the county board seeks to confer it on plain-
tiffs, is *ultra vires.* A review of some authorities
cited by plaintiffs, as those most nearly in point in

support of their position, may be helpful in arriving at a right conclusion, for it will thereby appear how far short they come of sustaining plaintiffs' contention.

In *Hornblower v. Duden,* 35 Cal. 664, it was decided that a board of supervisors might employ counsel other than the district attorney to assist in, or conduct, the prosecution of any suit to which the county is a party. The court held that while such power is not expressly conferred upon the board, it was necessarily included in the general power which the legislature had conferred upon it to control the prosecution and defense of all suits to which the county is a party. The mere statement of the facts of the case demonstrates its inapplicability to the one before us.

In *County of Franklin v. Layman,* 34 Ill. App. 606, it was held that the board of supervisors of a county might lawfully engage counsel to defeat the collection of an illegal tax which had been levied to pay bonds theretofore issued by the county, and this was said to be necessarily included within its express conferred power "to do all other acts in relation to the concerns of the county." It was said to be entirely competent for the county to relieve its taxpayers of an unjust burden, and to this end the appointment of counsel was necessary. This decision is not authority for plaintiffs' contention. It was the duty of the county, in the discretion of its board of supervisors, thus to protect its taxpayers, and this duty was not imposed on any other body or officer.

In *Board County Commissioners v. Mitchell,* 131 Ind. 370, the power of the board was said to include the making of a contract for indexing the judgment records of the county, because, if the records belonged to the county, as the court said they did, it was proper

for the county to keep them in such condition as to be most useful.

In *Wilhelm v. Cedar County*, 50 Iowa 254, it was decided that, under the laws of the state, it was the business and duty of a county to collect taxes, and to use all reasonable means to that end, and, therefore, a contract made by the board of supervisors to employ a special agent, or attorney, to assist in the collection of taxes, which were not collectible by the county treasurer in the discharge of his duty, was upheld. As the decision apparently was based upon the proposition that the county treasurer could not, with the machinery the law furnished, make collection of these taxes, and, as it was the duty of the county in its corporate capacity to collect them, the contract was sustained. As we shall see later, the law is otherwise in Colorado.

*Call v. Hamilton County*, 62 Iowa 448, citing with approval *Wilhelm v. Cedar County, supra,* sustained a contract between the county and a private individual, whereby the latter agreed to procure some one who wanted to buy state lands.

*Hawk v. Marion County*, 48 Iowa 472, held that it was within the power of the board of supervisors to offer a reward for the recovery of money which had been stolen from the county, but not a reward for the arrest of persons charged with the larceny. The latter was said to be within the exclusive province of the state, and the former within the necessarily implied power of the county. So far as that case has any bearing upon the one under consideration, it is in favor of defendant.

*Tasker v. Commissioners*, 82 Md. 150, decides that the county commissioners might employ persons to trace up and compile a book of abstracts and titles of all unassessed lands. This ruling was made because the county commissioners are expressly re-

quired by a statute of that state to assess for taxation unassessed lands, and to appoint agents who may be required for county purposes not otherwise provided for by law. This decision clearly was right because the compilation of an abstract of title of unassessed lands is directly in furtherance of its power of assessment, which the board of commissioners possessed.

*Agua Pura Water Co. v. Mayor, etc.*, 10 N. M. 6, was to the point that the board of county commissioners of a county might make a contract giving to a private corporation the right to supply an unincorporated town in such county with water for domestic and municipal purposes upon the ground that no other provision of law was made for the making of such a contract, and the board by statute was expressly given such power where the law had not otherwise conferred it.

Cases more nearly in favor of plaintiff's contention are *Burnett v. Markley*, 23 Ore. 436, and *State v. Hall*, 37 Ore. 479. In the former it was held that, under a statute giving to the county court the general care and management of the property, funds and business of the county, the county court might make a valid contract for preparing a list of the real estate of the county and its ownership for perfecting the tax rolls. The court held that such a contract was merely in aid of the assessor, but under it the county court could not usurp or interfere with the duties of the assessor, but might assist him in the discharge of the duties of his office, and thereby enable him properly to list and assess property for taxation. In the latter case, under the same section, it was held that the county court might employ a private citizen to assist the county revenue officers in collecting delinquent taxes which might not otherwise be collected. In this there was no interference

with the duties of the sheriff, who by law was made tax collector. The decision seems to have been predicated largely upon *Wilhelm v. Cedar County, supra,* and the court evidently considered it to be the business and duty of the county, as a corporate body, to collect taxes:

A case which, in principle, we think is more nearly like the one before us is *Burness v. Multnomah County,* 37 Ore. 460. The opinions in the three Oregon cases were written by Dean, Justice, and in the Burness case it was held that a contract by the county commissioners agreeing, in consideration of the undertaking, by a private citizen, to assist in the collection of delinquent county taxes, that, *inter alia,* the county court should give to him all sums of money in excess of the amount of the tax and the actual cost of collection, including penalty and redemption fees, was invalid because the contract undertook to interfere with duties which were imposed upon the county court. But, for a more serious reason, the contract was adjudged void because the board of commissioners undertook by the contract to interfere with the duties of the county clerk by stipulating how, and from what data, he shall make delinquent tax lists, when his duties in that regard are prescribed by statute.

In *Martin v. Whitman County,* 1 Wash. 533, under a statute which authorized the county commissioners to allow accounts chargeable against the county, not otherwise provided for, and to have the care of the county property and the management of county funds and business, the supreme court of the state held that the commissioners could make a contract with a private person for making a tax list of all the delinquent taxes in the county. It was expressly said in the opinion, however, that the county commissioners have no direct authority over, or pow-

er to interfere with, the several county officers in the discharge of their respective duties.

Plaintiffs rely chiefly upon *City of Richmond v. Dickinson,* 155 Ind. 345, and the recent case of *Disbrow v. Supervisors,* 119 Ia. 538. The former case is clearly distinguishable from the one at bar. It was there held that the common council of the city may make a valid contract with a private person for a search of property which has been secreted and omitted from the tax duplicates of the city. It was said, it is true, that the city clerk was not required to make the investigation. The decision, however, as the opinion shows, is clearly based upon the revised statutes of 1897, whereby is conferred upon common councils themselves the general power to levy and cause to be assessed and collected taxes, not merely upon property that is returned by the assessing officer for taxation, but upon all property that is subject to taxation, and it was said that this general power is worthless unless it carries with it the power to use means sufficient for its enforcement. The case is clearly distinguishable from ours in that, in Indiana, the common council has the express power not only to levy, but to cause to be assessed and collected, taxes, while the board of county commissioners in this state, though it has the power to levy, has nothing whatever to do with the assessment or collection of taxes. The court also observed that the general powers of counties were not involved in the case, and, therefore, not considered, and stress was laid upon the fact that, under the statute of 1891, the common council was prohibited from employing any person other than officials to discover omitted property, whereas, in the revision of the law in 1897, this prohibition was omitted.

In contrast with this case is *City of Ft. Wayne v. Lehr,* 88 Ind. 62, wherein it was held that, as by

statute it was made the duty of the city treasurer to collect city taxes, delinquent, current and unpaid, and that officer alone is clothed with power to enforce their collection, the city was powerless to make a contract with any other person than the treasurer for the collection of any city taxes.

In the Disbrow case from Iowa, the ruling was based upon the earlier decision in *Wilhelm v. Cedar County, supra,* because by law in Iowa it was made the duty and business of the county, in its corporate capacity, to collect taxes, it was held that the board of supervisors might employ a special agent, or attorney, to assist in such work by discovering and reporting for assessment property theretofore omitted from taxation. With the exception of the Oregon and Iowa cases, we think none of the foregoing authorities can fairly be claimed as a precedent for this contract, and these decisions, as we now proceed to show, though in some respects in harmony with plaintiffs' contention, are not in point under the law of this state.

And this naturally leads to a statement of the contention of the defendant county. It is defendant's position that, by statutory provisions relating to county treasurers, being sections 902, 903 and 3852 to 3880, and to county assessors, being sections 3812 to 3824, Mills' Ann. Stats., there have been delegated to those officers the exclusive power, and the corresponding duty, of assessing property for taxation and collecting the taxes levied thereon, and included in these specific grants of power to these officers, and constituting an essential part of their duty, is that of discovering omitted assessable property for taxation, and for which compensation is duly made. We think a fair construction of these sections fully sustains defendant's claims.

The election of a county assessor and a county
treasurer in each county is provided for by section
8 of article 14 of our constitution, and the treasurer
is thereby expressly made the collector of taxes.
Generally speaking, the powers and duties of such
officers were well defined when the constitution was
adopted, and it is presumed that the framers of the
original act intended to invest them alone therewith,
except as otherwise limited in that instrument.

In *Ames v. The People,* 26 Colo. 85, will be found
a discussion of this subject. It was there decided
that the general assembly was not inhibited by this
section from conferring upon the state board of equal-
ization power to assess railroad property for taxa-
tion, because, *inter alia,* the section should be con-
strued in connection with section 15 of article 10,
which authorizes the legislature to confer upon the
state board such other duties in relation to taxa-
tion as are prescribed by law. If the power, or
duty, which the county board assumed to itself, is
possessed by either of these officers, under the con-
stitution, the general assembly could not withdraw
it and confer it on the board.

But, in the present case, the constitutional pro-
vision is not, and need not be, invoked by the defend-
ant; for if it appears, as we have no doubt it does,
that there is no statute which, by fair implica-
tion, authorizes the county board to make this con-
tract, it is conceded that it is *ultra vires,* just as fully
as though it was beyond the power of the general
assembly by express statute to authorize it. We
proceed, therefore, to an examination of the statu-
tory provisions cited as pertinent to this controversy.

By section 3816, *supra,* the county assessor, who
is a constitutional officer, is required to submit to the
board of commissioners a complete assessment of his
county, and at the same time to submit a list of all

persons who have returned insufficient lists of personal property, or who have failed to return any list, as required by law. By section 3824, upon discovery, he shall assess any property which has been concealed, removed, transferred, or misrepresented by the owner, and is required to examine, under oath, any person or persons who he has reason to believe possess any knowledge thereof. By section 3820, all property which, for any reason, has been omitted in the assessment for any year or series of years, when discovered, shall be assessed by the assessor for the time being, and placed upon his tax books. The levy of taxes, which the county board is required to make, is based exclusively upon the assessment made by the assessor, or, under certain contingencies, by the county treasurer; and the board, in making the levy, is restricted to such lists as originally returned, or corrected as particularly required by statute.

By section 902, the county treasurer, by virtue of his office, is made collector of taxes, and by section 903, where the assessor has failed to assess and place upon the tax roll any property, the county treasurer may make the assessment and properly extend the tax. By section 3852, it is made the duty of the county treasurer to collect taxes which have been levied, as shown by the tax list, and warrant received by him. By other sections he has the power, by distraint and sale, to collect taxes, and it has been the practice in this state for the treasurer, in a proper case, to bring suit, in his official capacity, for the recovery of taxes when no other method is available.

The treasurer and the assessor in whom the power of assessment and collection of taxes is confided must be qualified electors of their respective counties and take the statutory oath of office. They are given the power to discover, and furnished with

facilities to bring to light, omitted assessable property. The conferred power carried with it the duty to discover the same.

It is not usual to confer a power of such importance upon a public officer without imposing a corresponding duty. If the power to do the very thing which this contract attempts to give to plaintiffs has been by statute conferred upon other public officers, as it is altogether plain has been done, certainly this negatives the existence of an implied power in the board of commissioners to do that thing. And since the express power to discover omitted unassessed property resides in the county assessor and county treasurer, it is much easier, by construction, to spell out of the statutes conferring the power the corresponding duty of discovery, by which only the express power is of any value, than it is to say that it is the implied duty of the county board, as a corporate body, to discover omitted property, when no express power whatever has been given to the county, in its corporate capacity, with respect to assessing or collecting taxes. Whether the statutes have made adequate and ample provision for the performance of this duty is not the question. If the statutory machinery is not effective, it is for the general assembly, and not the board of commissioners, to supply the remedy. If the power or duty to discover omitted property is imposed upon other officers, certainly the county does not possess it, and cannot confer it upon a private individual, for, in that case, the statutes have made other provision concerning it. We think it is not only the power, but the duty, of the county assessor and the county treasurer to discover omitted assessable property and tax the same and collect the taxes thereon, and they are paid to do so. This contract necessarily, in our judgment,

usurps the functions, and interferes with the duties, which belong to them.

A case directly in point in favor of the contention of the defendant is *Grannis v. Board of Commissioners*, 81 Minn. 55. It was there held that a county board could not make a valid contract with a private individual for discovering and bringing to light unassessed and untaxed personal property because, it was said, other officials having the power and charged with duties similar to those possessed by, and imposed upon, county treasurers and county assessors under our statutes, are charged with the performance of such duties, and they alone are responsible therefor. The decision is squarely in point, and states the true doctrine. Counsel for plaintiffs say that the decision should have been based upon a statute of the state of Minnesota, found in Session Laws of 1893, at page 280, which, in a certain contingency, gives to the governor power to employ a citizen of the state to discover undervalued or under-assessed property. The decision, however, was made more than seven years after the passage of this act, and, if then in force, the supreme court of Minnesota must have been aware of its existence. Further, the decision was not based on the statute, but put squarely upon the proposition that the power of taxation belongs exclusively to the state, and with respect to the levy, assessment and collection of taxes, counties, as such, or their agents, have no authority whatever, unless the legislature of the state expressly confers it upon them, and since the legislature of that state had provided officers, such as county treasurers and county assessors, whose duty it is to assess property for taxation and place it upon the tax roll, and collect taxes, the county commissioners, as agents of the county, had no control or authority over them with respect to the per-

formance of their duties to the extent that they could take away and confer upon a private citizen any of their powers or duties. The reasoning of the court is, to our minds, conclusive upon the question, and we are disposed to follow it.

For another reason there can be no recovery by the plaintiffs in this action, because the contract is incapable of enforcement. It provides that plaintiffs shall not be entitled to their commission until the taxes upon the discovered unassessed property are actually paid into the county treasury. Before anything could be received into the county treasury, the property on which the taxes are due must be assessed by the assessor and collection made by the treasurer. Confessedly, this omitted assessable property consists largely, if not altogether, of moneys and credits. In assessing such property the law of the state permits to be made deductions therefrom of certain valid indebtedness of the owner, and the assessor is invested with a large discretion, and is given quasi-judicial power, in making such deductions and estimating the value of the property for taxation. Certainly, neither the assessor nor the treasurer is bound by this contract, for they had nothing to do with its execution, and it was beyond the power of the county board, even if it had undertaken to do so, to bind or control them in the discharge of their official duty. The enforcement of the contract necessarily contemplates action both by the assessor and the treasurer which neither party to the contract can require them to take, and assumes to make as a subject of the contract powers and duties belonging clearly to them. And, until the county assessor acts and makes the assessment, and the treasurer collects the tax thereon, there is no way of determining the amount of the commission which plaintiffs claim. These officers refused to as-

sess the property discovered by plaintiffs. No proper measure of plaintiffs' damages exists. What they would be entitled to is purely speculative and conjectural. The uncertainty, nay, the impossibility, of ascertaining in this action either the valuation of the omitted property, or the amount of tax that would be collected, renders the contract absolutely incapable of performance.

The judgment of the district court which resulted in a dismissal of the action was right, and is affirmed.                                        *Affirmed.*

·    CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur. ·