[No. 4046.]

## COUNTY OF GUNNISON ET AL. V. DAVIS.

1. COUNTY COMMISSIONERS—*Powers.* Within the scope of their powers the Board of County Commissioners are supreme. They cannot be superseded, nor can their acts be judicially controlled or reviewed, except for an excess of jurisdiction or abuse of discretion. (506, 507.)

2. —— *Implied Powers.* The Board of County Commissioners possess such implied powers as are reasonably necessary to the efficient exercise of those powers and duties which are conferred and imposed upon them by the express words of the statute. Where a specific duty is declared the power to employ such agencies as are reasonably necessary to effectually perform that duty is granted by implication, unless by statute the board is expressly limited to specific means and agencies. (503.)

3. —— *Duties Compulsory.* The board cannot shift its powers to another, nor evade responsibility for its declared duties. (505.)

4. —— *Audit of Public Accounts.* The board being expressly charged with the duty of auditing, correcting and adjusting the accounts of county officers, and not being limited to any specific means or agencies, have implied power to employ an accountant to make the audit. (504.)

The power is not taken away by the Public Examiner's act (Laws 1909, c. 192, Mills Stat., sec. 131.) (505.)

The board have no control of the public examiner, no authority to direct an audit by him of the books of a county officer, and is not charged with notice of his report when made. (505.)

5. —— *Necessity for Expert Audit.* That an examination of the books of the treasurer has been made by a committee appointed by the District Court, and of the accounts of other officers, by he Public Examiner, is no ground to deny the power of the County Commissioners. Where it appears that no audit has been made by an expert, for many years, that the report of the Public Examiner was incomplete and unintelligible, that the Treasurer and Recorder had refused to allow an examination of their books, and that the tax-payer seeking to restrain the examination is a near relative of one of the officers, *held* to sufficiently evidence the advisability of an expert examination, even if any evidence, beyond the action of the board, were necessary. (506.)

6. EVIDENCE—*Judicial Notice,* taken, that in most counties, substantial sums should remain to the credit of the General Fund. (503.)

And that county officers are not always competent or faithful, and that some are guilty of speculation and embezzlement. (504.)

And that County Commissioners are not generally expert accountants. (504.)

7. COUNTIES—*Contingent Fund.* The expense of an examination of the books of the county officers, not contemplated at the date of the annual appropriation, may properly be discharged from the Contingent Fund. (506.)

*Error to Gunnison District Court.* HON. THOMAS J. BLACK, Judge.

MR. E. M. NOURSE, MESSRS. CRUMP & ALLEN, MR. E. J. BOUGHTON, for plaintiff in error.

MESSRS. SAPP & NASH, for defendant in error.

*Per Curiam.*

February 5, 1913, the Board of County Commissioners of Gunnison county employed Harry E. Mulnix, plaintiff in error, as an expert, to audit the books and accounts of certain county officers, the audit to include the years 1907 to 1912, inclusive, at an agreed compensation of $299.75 for each of said years. When Mulnix, with his assistants, attempted to make such examination and audit, the county treasurer and the clerk and recorder refused to allow the examination of their books and accounts, alleging as a reason for refusal that suit had been commenced to enjoin the execution of the contract. About that time the defendant in error instituted this proceeding, seeking to restrain he said board and Mulnix from performing the contract. A temporary writ of injunction was issued, and on final hearing was made permanent. Defendants are here with their writ of error.

The principal question involved is whether or not the Board of County Commissioners has authority in law, at the expense of the public, to employ a person to audit the books and accounts of the several county officers. Incidentally, and subordinate thereto, are other questions which will be discussed and disposed of.

1. The Board of County Commissioners possesses such powers as are expressly conferred upon it by the contitution and statutes, and in addition thereto such implied powers as are reasonably necessary to the efficient execution of its

express powers and duties. *Roberts v. The People,* 9 Colo. 458, 13 Pac. 630; *Chase v. Boulder County,* 37 Colo. 268, 271, 86 Pac., 1011, 11 Ann. Cas., 483; *Robbins v. County Commissioners,* 50 Colo. 610, 615, 115 Pac. 526.

We entertain no doubt that when a specific duty is by statute imposed on the board, the power to employ such agencies as are reasonably necessary to effectually perform that duty is granted by implication, unless by statute the board is limited to certain means and agencies, by which such duty is to be performed or power exercised. "The county commissioners represent the county, and have charge of its property and the management of its business concerns. They are neecssarily vested with reasonable discretion in the administration of county affairs." *Roberts v. The People, supra,* at page 472. It is expressly empowered to make all contracts and do all other acts necessary to the exercise of its corporate and administrative poewrs. Sec. 1177, sec. 1179, sec. 1204, R. S. '08; sec. 1288, sec. 1290, sec. 1313, M. A. S. '12. It is expressly charged with the duty of auditing the accounts of county officers, and correcting and adjusting the same. Sec. 2553, R. S. '08; sec. 2911, M. A. S. '12. The purpose and vital importance of an efficient audit is manifest from the statutory requirement that all prescribed fees shall be collected in advance by county officers, and when collected shall be paid to the county treasurer, and that any balance left to the credit of the several funds in any year, after the salaries and compensation provided for shall have been paid therefrom, shall be placed to the credit of the general county fund. The statute attaches severe penalties to the failure of such officers to pay over such fees. Sec. 2554, R. S. '08; sec. 2912, M. A. S. '12. It is common knowledge that in most counties of the state substantial sums should remain to the credit of the general county fund, and serve to relieve the heavy burden of taxation, if the official duty to charge, collect and account for the statutory fees, and economically administer the offices of the county, is faith-

fully performed. That county officers charged with the collection, safe keeping and disbursement of public funds are not. always competent, economical and faithful, but sometimes commit gross erors, through incompetency or carelessness, sometimes are extravagant and unfaithful in accounting, and that some are even given to peculation and embezzlement, is also common knowledge. Not many of the powers conferred, or duties imposed, on the board, are paramount in importance to that of its supervision over the accounts of such officers. When it is known that such accounts will be effecually and frequently examined, and publicity given to the result, that knowledge will have a strong tendency to neutralize the temptation to peculation, and to encourage economy, accuracy and honesty, in the discharge of official duty with respect to public funds, as well as to allay unjust suspicion.

It is also common knowledge that county commissioners are not generally expert accountants, and may not be able to make an expert or efficient audit of such accounts. The board is not limited by the statute to any specific means or agencies for making such audit. We conclude, therefore, that the board had the implied power to employ said accountant. Statutes similar to those of this state, relating to the matters under consideration, were construed in *Harris v. Gibbins*, 114 Cal. 418, 46 Pac. 292, and *Prothero v. Board of Com'rs*, 22 Idaho 598, 127 Pac. 175, and in both cases it was held that the board had the authority to contract for an expert audit. In the case first cited the court said:

"The County Government Act requires many things of the supervisors which they could not wholly accomplish personaly, or do manually with their own hands. It is difficult to conceive how a board of supervisors in its capacity as a body corporate and politic could expert books, or be an expert accountant, and yet the experting of books seems to be necessary to that supervision of county officers which the law expressly imposes upon such board. Power to accom-

plish a certain result, which evidently cannot be accomplished by the person or body to whom the power is granted without the employment of other agencies, includes the implied power to employ such agencies; and in such case, when the law does not prescribe the means by which the result is to be accomplished, any reasonable and suitable means may be adopted."

2.   Defendant in error contends that, even though the power to enter into the contract in question may have existed expressly or impliedly, prior to the Public Examiners Act (Chapter 192, Session Laws 1909, sec. 131 M. A. S.), nevertheless such power was repealed by that act.   With that contention we do not agree.   We find no evidence of such intent on the part of the General Assembly.   Repeal by implication is not favored in law, and there is no express repeal in the act.   No reason is shown, and we think none exists, for holding the provisions of that act to be inconsistent with the exercise by the Board of County. Commissioners of its power, or that necessarily relieves it of its duty to audit the accounts.   The examination to be made by the public examiner is manifestly for the use of the state, as distinguished from the local county government; the expense thereof is paid by the state; the report is to be submitted to the governor, for transmission to the legislature, and made a matter of public record in the office of the auditor of state.   No report is required to be made to, or filed in the office of, the Board of County Commissioners.   It has no authority to direct the state examiner to audit the books of the county officers, or to require a report from such examiner.   It is not expressly, nor do we think impliedly, bound by, or charged with, notice of such report when made; *Prothero v. Board of Com'rs, supra.*   The board cannot shift or evade its responsibility for performance of its duties; within  the scope of its powers it is supreme; in the exercise of its reasonable discretion, in the administration of county affairs, it cannot be superseded, nor can its acts be judicially

controlled or reviewed, except for abuse of discretion or excess of jurisdiction.

3. We find no support for the contention that no appropriation had been made out of which the expense contracted for could be paid. A sufficient amount appears to have been provided for in the contingent fund. It seems to be conceded that this expense was not specifically contemplated, nor the necessity for the audit foreseen or recognized, by the board, at the time the appropriation resolution and levy were made. We think the expense contracted for comes fairly within the purposes for which a contingent fund is created.

4. The point seems to have been raised that a necessity did not exist for the expert audit contracted for. That contention is based entirely upon the allegation of the complaint that the treasurer's books had been examined by a committee appointed by the District Court, and that an examination of the accounts of other officers had been made by the public examiner. That showing alone is not sufficient. It is affirmatively shown by the defendant board that no expert audit had been made of the accounts for the years 1907, 1908, 1911 and 1912, and it is further shown by affidavit on preliminary hearing, that the examination made by the Public Examiner for the years 1909 and 1910 was incomplete, unintelligible, and unsatisfactory to the board of commisisoners, but nevertheless the report was adverse to certain of the officers so examined, disclosed irregularities in their books and accounts, and recommended that the district attorney take official action against such officers. It is further shown that a large majority of the electors and taxpayers of said county demanded an examination of the books. These matters, if any proof of necessity, other than the action of the board in employing an expert accountant, thereby declaring that a necessity did exist, was required, made a sufficient showing, to completely overcome the mere allegation or admission that other examinations

had been made, which, in the opinion of the board, were perfunctory and unsatisfactory. *Prothero v. Board of Com'rs, supra.* It is axiomatic that competent and honest officials court inspection of their acts and accounts. The fact that the officials having charge of the public funds refused to permit an inspection by the board, and that the "taxpayer" plaintiff is a near relative of the treasurer, affords strong presumptive proof that an expert audit was advisable.

5. Without in any manner challenging the right or power of a court of equity to exercise juridiction, in a case of this kind, when appropriately invoked, we are persuaded that there is nothing appearing in this record which justified or authorized the court to substitute its discretion in the administration of county affairs for that of the board of county commisisoners, in which that discretion is vested by statute. The temporary writ of injunction was improvidently issued, and the judgment making it permanent, not being supported by the evidence, cannot be sustained.

We have examined all the cases cited, but find none of controlling effect, opposed to the conclusions we announce. The judgment is reversed, and the cause remanded with instructions to vacate the injunction and dismiss the proceeding, at the cost of the defendant in error.

*Reversed and remanded.*