## NEWS-DISPATCH PRINTING & AUDITING CO. v. BOARD OF COM'RS OF GRADY COUNTY.

No. 7854—Opinion Filed Nov. 14, 1916.

(161 Pac. 207.)

### Counties—Commissioners—Powers of.

Where the statutes have created two administrative offices, with co-ordinating powers and duties, in the absence of express authority so to do, there is no implied author-

ity in one office to contract with private individuals to perform service which it is the express statutory duty of the other office to perform. The statute, which created the office of state examiner and inspector and imposed upon that office the duty to examine the books and accounts of all or any officers or custodians of the various funds of a county, upon request of the county commissioners of any county, etc., was intended for the benefit of the counties of the state; it is the duty of the office of the state examiner and inspector to conduct such county audit upon such request; the county commissioners have no implied authority to employ a private individual to conduct such audit; and a contract between a board of county commissioners and a private individual for such purpose is ultra vires and void.

(Syllabus by Johnson, C.)

Error from District Court, Grady County; Will Linn, Judge.

Action by the News Dispatch Printing & Auditing Company against the Board of County Commissioners of Grady County. Judgment for defendants, and plaintiff brings error. Affirmed.

Oscar Simpson, J. S. Thompson, G. N. Longfellow, and Pat Nagle, for plaintiff in error.

John H. Venable and Allen K. Swan, for defendants in error.

Opinion by JOHNSON, C. During the month of December, 1914, the board of county commissioners of Grady county entered into an agreement with the News-Dispatch Printing & Auditing Company, by the terms of which the auditing company was engaged to audit the books and accounts of the clerk of the district court and county clerk of said county, the county to pay for the services of one expert accountant to be furnished by the auditing company at the rate of $10 per day and traveling expenses, the audit to be completed within 30 days, or as soon thereafter as practicable. After the accountant furnished by the auditing company had worked 15 days, the county board ordered the work stopped, and notified the company that performance of the contract could not proceed, for the reason that the board had received advice that the contract for the audit was not within the powers of the board, and consequently not legal. The work was stopped; and the auditing company later filed its claim with the county for the work done, expenses, and for 40 additional days that the auditor would have been paid for if he had been allowed to complete the contract. The claim was disallowed, and this suit was brought by the auditing company for the items covered by the claim. The lower court

sustained the demurrer of the board to the petition, one of the grounds of demurrer being that the county board had no authority under the law to enter into the alleged contract; and the auditing company has appealed to this court.

The question involved is whether a board of county commissioners may legally employ the services of an accountant, other than the state examiner and inspector and his deputies, to audit the books and accounts of county officers and custodians of county funds. The statute creating the office of state examiner and inspector, after providing for the duties of such officer with reference to the books and accounts of state officials, contains this provision, viz.:

"Duties and Powers. * * * In addition to the above-prescribed duties, upon request of the county commissioners of any county, or upon request to the Governor, signed by five per cent. of the legal voters of any county, and by order of the Governor, the state examiner and inspector shall examine or cause to be examined by duly appointed deputy or deputies, the books and accounts of all or any of the officers or custodians of the various funds of the county; and payment for such examinations shall be made out of the contingent fund of the county so examined at the same salary and expenses provided herein for deputy examiners. The state examiner and inspector shall have power to appoint additional special deputies for this purpose: Provided, that no deputy shall examine the books or records of the county of his residence. * * *" Section 8119, Revised Laws of 1910.

Section 1600, Revised Laws 1910, confers the following power upon boards of county commissioners, to wit:

"To audit the accounts of all officers having the care, management, collection or disbursement of any money ·belonging to the county, or appropriated for its benefit."

Section 1601, Revised Laws 1910, provides:

"The board of county commissioners is hereby vested with full power to inquire into and investigate the accounts, disbursements, bills and expenses of any county. district, or township officer. and to that end may subpoena witnesses," etc.

It is the contention of defendants in error that under these statutes. while the county commissioners have authority to provide for the auditing and examination of county records, they are confined to the employment of the state examiner and inspector or deputies from his office, and cannot legally contract with a private individual or corporation to do that work. It is contended by plaintiff in error that while the law provides that the county commissioners may call upon the state examiner and inspector to make the

audit, yet the language here employed does not compel them to do so, but leaves them free to act in accordance with their own discretion in choosing employes or agents to perform the service.

It may first be said that a county is an involuntary political and civil subdivision of the state, created by statute to aid in the administration of governmental affairs, and possessed of a portion of the sovereignty. All the powers with which it is intrusted are the powers of the sovereignty which created it, and all the duties with which it is charged are the duties of the sovereignty. It is only liable for such obligations as the Legislature has imposed, or authorized it to create, or such as are necessarily incident to the object of its creation. And the board of county commissioners can exercise such powers only as are conferred upon it by the Constitution or the statutes, or such as may arise by necessary implication from an express grant. Board v. Watson, 7 Okla. 174, 54 Pac. 441; Tulsa St. Ry. Co. v. State, 26 Okla. 559, 110 Pac. 373; Allen v. Board, 28 Okla. 773, 116 Pac. 175.

Such power as the county commissioners have to choose an agency for the service under consideration must be found in the statutes hereinabove quoted. Sections 1600 and 1601 undoubtedly confer authority upon the board to audit, inquire into, and investigate the accounts of county officers, and this authority includes, not alone the power to approve or disapprove, audit, and investigate the reports of such officers, but the power to procure an expert audit of the county records. Section 8119, quoted supra, provides an instrumentality for the exercise of the latter power, viz., the services of the state examiner and inspector, and his duly authorized deputies. It becomes necessary to determine whether this instrumentality is exclusive. It has been said by this court:

"It is a familiar rule of construction, as laid down in the syllabus of United States v. Weld, McCahon, 185 (Kan. Dassler's Ed.) 591 (Fed. Cas. No. 16660), that: 'When one person or class of persons, is named in a power of attorney, or an act of the lawmaking power as being authorized to do a certain thing therein named, all other persons are thereby excluded from doing the same thing as effectually as if they were positively forbidden.'" State ex rel. Haskell, Governor, v. Huston et al., 21 Okla. 782, 97 Pac. 982; Osage & Oklahoma Co. v. Millard, 45 Okla. 334, 145 Pac. 798.

With reference to the power of the county board to employ agents, Cyc., vol. 11, p. 473, lays down the general rule as follows:

"With these limitations, county boards or courts have power to appoint such agents, officers, and servants as may be required for county purposes, **and which are not otherwise** provided by law or by the state Constitution." (Emphasis ours.)  Chase v. Board, 37 Colo. 268, 86 Pac. 1011, 11 Ann. Cas. 483; Stringer v. Franklin County, 58 Tex. Civ. App. 343, 123 S. W. 1168; Wilhelm v. Cedar Co., 50 Iowa, 254; Ringgold Co. v. Allen, 42 Iowa, 697.

In the case of State v. Goldthait, 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. 737, the Supreme Court of Indiana said:

"A contract with a county for the performance by a third person of duties which are imposed by law on a public officer is void as against public policy."

In the case of Stringer v. Franklin Co., supra, the Court of Civil Appeals of Texas said:

"Where the law imposes on an officer the performance of acts as a part of his official duties, the commissioners' court of the county is without authority to contract with any other person to perform such services."

It is said by the plaintiff in error that the law does not impose upon the state examiner and inspector the duty to audit the county records, **except upon the request** of the county commissioners, that such duty only arises upon such request, and that the making of such request lies in the discretion of the county board. Section 1556 of Revised Laws 1910, which was in force in the territory of Oklahoma, provides:

"The county attorney shall give opinion and advice to the board of county commissioners and other civil officers, of his county **when requested by such board or officers,** upon all matters in which the county is interested," etc.

In the case of the Board of County Commissioners of Logan County v. Jones, 4 Okla. 341, 51 Pac. 565, in a discussion of the power of the county board to employ an attorney at law to perform duties imposed by the statute upon the county attorney and Attorney General, referring to the statutes imposing such duties, it was said:

"By these statutes the Legislature has made ample provision for an attorney for both the county, and, in fact, each and every county, and the territory. It is the duty of the county attorney to perform all legal services for the county and territory within his county, and in cases in which the territory or county is interested which have been taken from his county on change of venue. It is the duty of the Attorney General to prosecute and defend all cases, civil and criminal, in the Supreme Court where the territory is interested as a party. The Legislature has given to the county commissioners no au-

thority whatever to employ any other attorney than the one who is employed by law to represent the public interests, and a contract made for such purpose is ultra vires and void."

In the case of Clough & Wheat v. Hart, 8 Kan. 487, quoted with approval by the Oklahoma Territorial Supreme Court in the Jones Case, supra, holding a contract for the employment of an attorney to perform services for the county to be void, it was said:

"The county attorney is elected by the people of the county and for the county. Gen. Stat. pp. 283, 135. He is the counsel for the county, and cannot be superseded or ignored by the county commissioners. His retainer and employment is from higher authority than the county commissioners. The employment of a general attorney for the county is not by law put into the hands of the county commissioners, but is by law put into the hands of the people themselves. The county attorney derives his authority from as high a source as the county commissioners do theirs, and it would be about as reasonable to say that the county attorney could employ another board of commissioners to transact the ordinary business of the county as it is to say that the county commissioners can employ another attorney to transact the ordinary legal business of the county. Both would be absurd. It is the duty of the county attorney to give legal advice to the county commissioners, and not theirs to furnish legal advice to * * * him."

In the case of Brome v. Cuming County, 31 Neb. 362, 47 N. W. 1050, the Supreme Court of Nebraska used this language:

"The Legislature has made ample provision for protecting the interests of the county and state by furnishing proper legal counsel. The statute having pointed out the mode of procuring counsel for the county, it is exclusive of all others. The services rendered by the plaintiff in error for which he claims compensation in this case are precisely what the law required the county attorney to perform. The employment was without authority of law, and no recovery can be had."

See 11 Cyc. 472, and cases there cited.

While the duties of the office of county attorney are dealt with in most of the cases referred to, the analogy is clear. The principle of lack of authority to ignore or disregard the statutory duties of one officer, or to replace him, applies as well to any other officer deriving his powers and duties from the same source. In the kingdom of natural law, every body improperly functions when its co-ordinate parts do not work with that harmony designed by the Creator. In the realm of mechanics, no machine may properly perform when its various parts do not work together with that co-operative precision which meets the creative intention of the in-

ventor. In each instance, if any part of the whole fails to receive the prescribed co-ordination of any other part, such failure not alone interferes with the operation of the principal unit, but with the successful operation of both the part which does not receive, and the part which is not permitted to give, co-operation. This law of co-ordination likewise controls human organization, including government; and under its rule, each part of administrative governmental machinery must accept and give the co-operative action contemplated in the plan of the legislative creation and growth of the whole. The rule that one officer cannot supplant another in the performance of his duty, by necessity arises from this law of co-ordination.

The law, which created the office of state examiner and inspector, made it mandatory upon that officer, upon request of the county commissioners, or upon the order of the Governor at the request of a certain per cent. of the voters of a county, to perform the duties sought to have been obtained of another in this case. It fixed his remuneration, to be paid out of the county treasury. It gave him official powers not had by any individual auditor, and fixed penalties for violations of his prerogatives. It required of him a large official bond for the faithful performance of his duties. It did everything necessary to make of his office a co-ordinating instrumentality in the performance of the duty of the county commissioners to procure an audit of the county records. These actions of the legislative power were not without meaning; and it was evidently the intention that the created instrumentality should be used. It was necessary to vest somewhere the discretion to determine when the necessity of its use arises; and this discretion was vested in the county commissioners, and in the Governor acting upon the petition of a per centum of the voters. It is the duty of the county attorney to give legal advice to the county officers, **upon request of such officers;** and yet it is held that, when the necessity arises, he must be called into service, and cannot be supplanted. The call of the state examiner and inspector to the service of the county is based upon exactly the same condition, the **request** of the county officials. The predicate of co-ordination is the same as to both offices, and the conclusion necessarily is the same.

Plaintiff in error cites the case of Board of Com'rs v. Davie, 27 Colo. App. 501, 150 Pac. 324, in which the Supreme Court of Colorado held valid, under the statutes of that state, a contract by county commissioners with a private individual to audit the

county records, to the exclusion of the state examiner. That decision specifically stated that the examination of county records by the public examiner, as provided for by the statute of that state, was manifestly for the use of the state; that under the statute the expense of the examination was paid by the state; that the county commissioners were given no authority to direct the state examiner to make the audit; and that the commissioners were not bound by, nor charged with notice of, the report when made. That decision was based, also, upon a decision of the Supreme Court of California, upholding a contract for a similar audit by private individuals, the latter decision being based upon the fact that the law prescribed no other means by which the result could be accomplished. As already pointed out, our statute provides a means for the result, and the lack of statutory co-ordination between the office of the state examiner and the county authorities, which existed under the Colorado statute, does not exist under our statute, but is specifically cured.

In the case of Chase v. Board, 37 Colo. 268, 86 Pac. 1011, 11 Ann. Cas. 483, where the statutory co-ordination existed between offices, the Supreme Court of Colorado held to the principle we have laid down, in holding invalid a contract by the county with a tax ferret to list omitted property, upon the ground that this duty was vested in the tax assessor, saying:

"If the power to do the very thing which this contract attempts to give to plaintiffs has been by statute conferred upon other public officers, as it is altogether plain has been done, certainly this negatives the existence of an implied power in the board of commissioners to do that thing."

Our statute gives to the county commissioners the authority to audit the accounts of county officers, and under certain circumstances they may require expert assistance. Where expert assistance is required, the statute has furnished it in the instrumentality of the office of the state examiner and inspector. The statutory instrumentality is sufficient to meet all requirements; and where the means provided by the statute are sufficient, there is clearly no implied authority to discard their use and contract for the use of other means. If the implied authority to use other means existed prior to the statute creating the office of state examiner and inspector, the plain creation of another sufficient statutory instrumentality is sufficient to work a repeal.

Other questions are raised in the case, but the decision as to validity of the contract fully determines the appeal.

The lower court was correct in holding the contract of plaintiff to be ultra vires and void, and in sustaining the demurrer to the petition; and its judgment should be affirmed.

By the Court: It is so ordered.