## FANCHER et al. v. BOARD OF COMMISSIONERS OF GRANT COUNTY

### SYLLABUS BY THE COURT

(1)    Section 4798, Code 1915, authorizes the board of county commissioners of any county in the state to have a complete and accurate index made of all the instruments of record affecting real property, and provides: "They are hereby authorized to have such index made by the county clerk of said county." **Held,** that this section limits the power of boards of county commissioners to have such indexes prepared by persons other than the county clerk, and under such section they are not authorized to employ a private individual to make such an index.          P. 182

(2) Where authority is given to do a particular thing, and the mode of doing it is prescribed, it is limited to be done in that mode, and all other modes are excluded.
P. 189

(3) The Legislature may prescribe the method for exercising the jurisdiction of the board of county commissioners, and, where it prescribes the mode, the rule is exclusive of all others and must be followed.        P. 190

(4) There is no presumption in law that a public official is to receive a salary, and it is the duty of a public official, so long as he holds public office, to perform the duties prescribed by law.        P. 190

(5) Where, by law, the duty of performing certain work is cast upon a designated county official, it is not competent for the board of county commissioners to employ other persons to do the work required of such county official and pay for such services.        P. 190

(6) Under the statutes of this state it is made the duty of the county assessor to list any omitted property, if he discovers any before the delivery of the tax rolls to the treasurer, and it is made the duty of the state tax commission to ascertain whether property in any county has been omitted from the roll, in whole or in part, or inaccurately or inadequately described, and certify the fact to the county assessor, who shall place it on the roll accordingly. Under the statutes, to say the least, an implied duty is cast upon the assessor to search for and place upon the tax rolls omitted property and a positive duty is cast upon the state tax commission to do so. The positive duty being thus cast upon the state tax commission to search out and place upon the tax rolls omitted property, the county commissioners are precluded from employing private individuals to do this work, and a contract with a private individual to install a checking and classification system, designed to assist the county assessor in placing upon the tax rolls omitted property, is beyond the power of the board of county commissioners.        P. 203

(7) The test is not whether the duty is primary or secondary, but whether provision has been made by law for the accomplishment of the end, or the doing of the work, or the performance of the services for the benefit of the public in its organized capacity.        P. 203

(8) Where the invalidity of a contract with a municipal corporation is due to the entire lack of power of the corporation to enter into it, there can be no recovery upon a quantum meruit, and the municipal corporation can neither ratify the contract nor be estopped from pleading its invalidity.        P. 204

### On Rehearing.

(9) The intention of the parties making a contract is the controlling consideration in determining whether the same is severable or entire. In ascertaining the intention of the parties, resort must necessarily be had to the terms of

Fancher et al. v. County Com., 28 N. M. 179

the contract in the first instance. If they clearly indicate the intention the question is at once settled. If they do not clearly indicate the intention, resort may then be had to the nature of the subject-matter; whether the contract apportions the consideration to each of the items covered may be considered; whether the whole quantity, service or thing, as a whole, is of the essence of the contract, and perhaps other tests may be resorted to.                P. 206

(10) The contract in this case examined and is held to be entire.                                P. 209

Appeal from District Court, Grant County; R. R. Ryan, Judge.

Action by J. E. Fancher and another against the Board of County Commissioners of Grant County. Judgment for defendant on demurrer, and plaintiffs appeal. Affirmed.

C. C. Royall, of Silver City, A. B. Renehan, of Santa Fé, and R. H. Hanna, of Albuquerque, for appellants.

Forrest Fielder, of Deming, and Percy Wilson, of Silver City, for appellee.

### OPINION OF THE COURT

ROBERTS, C. J. Appellants filed a complaint against the appellee in the district court of Grant county to recover under a contract entered into on the 5th day of February, 1918, between J. E. Francher Company, a copartnership, and the board of county commissioners of Grant county, by the terms of which the company was to do the following things:

(1) To make up and furnish for the use of the county clerk of said Grant county a complete and correct Cotts record index system.

(2) To make and furnish for the use of the tax assessor of said Grant county a complete and correct Beall standard classification and checking system.

(3) To transcribe or reproduce any and such records of the county clerk's office as may be determined by said clerk to be in such condition that their reproduction is necessary for their preservation and future use.

The compensation to be paid for such work and services was at a stipulated price per entry or for the work done. The Holbrook State Bank advanced large sums of money for the carrying on of such work, as did the Socorro State Bank, and took an assignment of an interest in the money due to secure the payment of the money.

The complaint consisted of three causes of action, the first of which was founded on the contract and alleged that Fancher's assignee of said company and his predecessors in interest duly performed all the conditions of such contract to be performed, but that the appellee refused to pay for such services and work, and recovery of the contract price was sought. The second cause of action was upon a quantum meruit to recover the sum of $170,000, and the third cause of action asked that the appellee be enjoined from asserting the defense of ultra vires, and that it be estopped from predicating a defense upon a pretense that the contract was unenforceable at law.

A demurrer was interposed to the complaint which, summarized, is as follows: (1) That the said contract and modifications thereof were ultra vires of the said board of county commissioners of Grant county; (2) that the said record index system and modifications thereof are not an article or thing for which the appellee has authority to contract; (3) that the said checking system is likewise not a matter or thing for which the said appellee has authority to contract; (4) that the work done under the contract exceeds the sum of $300, and that no advertisement thereof was made and no bids were taken; (5) that the second cause of action did not state facts sufficient to justify a recovery. The demurrer was sustained, and the appellants, electing to stand upon the complaint, have perfected this appeal from a judgment dismissing the complaint.

[1] The first question which presents itself is as

to whether or not boards of county commissioners have power to contract with persons other than public officers to prepare an index of the record of conveyances on file in the office of the county clerk. Section 1150, Code 1915, authorizes boards of county commissioners to "make all contracts and do all other acts in reference to the property and concerns necessary to the exercise of its corporate or administrative powers." Section 1199 confers upon such boards the powers "to make such orders concerning the property belonging to the county as they may deem expedient," and by section 1201 such boards are declared to "have the care of the county property and the management of the interests of the county in all cases where no such provision is made by law." Section 4789, Code 1915, requires the county clerk to keep a reception book wherein shall be entered the names of the grantor, mortgagor, or other persons whose title is affected thereby, alphabetically arranged, stating the day, hour, and minute of such record. Section 4781, Code 1915, requires such clerks to record land titles or other documents and to record the same as soon as possible, such documents from the date of delivery to the county clerk being considered as recorded and as sufficient notice to the public of the contents thereof. Section 3957, C. L. 1897, provides that the records of deeds and mortgages shall be kept in separate books and that "the index thereof shall contain, in addition to the names of grantors, mortgagors, grantees and mortgagees, the date of record of each instrument, and they shall be arranged under the proper alphabetical heads in the chronological order of record." This section appears as section 5, c. 10, Laws of 1887, but only the first sentence thereof was brought forward into the Code of 1915. In 1903, the Legislature, by chapter 87, Laws 1903, provided in part as follows:

"Sec. 1. That whenever, in the opinion of the board of county commissioners of any county in the territory, it is necessary for the convenience of the public and the better preservation of titles to real property, to have a complete and accurate index made of all instruments of record

affecting real property, they are hereby authorized to have such index made by the probate clerk and ex officio recorder of said county, and it shall be the duty of said clerk and recorder to immediately proceed to index the records beginning with the first volume of each of the above series of records and indexing each instrument therein until all of the said records shall have been accurately indexed to the first day of April, 1903."

That section was carried forward into the Code of 1915 as section 4798 as follows:

"That whenever, in the opinion of the board of county commissioners of any county in the state, it is necessary for the convenience of the public and the better preservation of titles to real property, to have a complete and accurate index made of all instruments of record affecting real property, they are hereby authorized to have such index made by the county clerk of said county."

Independent of the provisions of 4798, supra, there can be no doubt that boards of county commissioners would have power to contract and pay for the preparation of an index to the records of conveyances of the county; but the proposition which concerns us is as to whether section 4798, supra, limits the power of such boards to have such indexes prepared by persons other than the county clerk. In other words, is section 4798, supra, exclusive, or is it merely the grant of power in addition to that already possessed by boards of county commissioners under the general powers heretofore set forth? Practically the same proposition was involved in the case of News Dispatch Co. v. Board of Commissioners, 61 Okl. 259, 161 Pac 207, wherein it appears that the county commissioners entered into a contract with the printing company, by the terms of which the latter was to make a certain audit for the county and to be paid therefor upon a stipulated basis. In that state the commissioners were generally authoried by statute to audit the accounts of all officers having the care, etc., of money belonging to the county, or appropriated for its benefit, but were also invested with power to inquire into and investigate the accounts, etc., of county, district, and township officers. There, as in the case at bar, a particular statute, dealing with

Fancher et al. v. County Com., 28 N. M. 179

the manner and mode of having an audit of accounts made, was in force. That statute provided:

"**Duties and Powers.** * * * In addition to the above prescribed duties, upon request of the county commissioners of any county, or upon request of the Governor, signed by five per cent of the legal voters of any county, and by order of the Governor, the state examiner and inspector shall examine or cause to be examined by duly appointed deputy or deputies, the books and accounts of all or any of the officers or custodians of the various funds of the county, and payment for such examinations shall be made out of the contingent fund of the county so examined at the same salary and expense provided herein for deputy examiners. The state examiner and inspector shall have power to appoint additional special deputies for this purpose: Provided, that no deputy shall examine the books or records of the county of his residence. * * *" Section 8119, Revised Laws of 1910.

It was contended by the defendants, in error that while the county commissioners had authority to provide for auditing and examining county records, nevertheless, by virtue of the statute last quoted, such authority was confined to the employment of the state examiner and could not legally be contracted for with a private individual or corporation. Whereas, the plaintiffs in error contended that while the law provides that the commissioners might call the state examiner to make the audit, yet the language did not compel them to do so, but left them free to act in accordance with their own discretion in choosing agents to perform the service. After declaring that counties were involuntary political and civil subdivisions of the state, created by statute to aid in the administration of governmental affairs, and consequently possessed only such powers as were intrusted to them by statute or such as may arise by necessary implication from express grant, the court said:

"Such power as the county commissioners have to choose an agency for the service under consideration must be found in the statutes hereinabove quoted. Section 1600 and 1601 undoubtedly confer authority upon the board to audit, inquire into, and investigate the accounts of county officers, and this authority includes, not alone the power to approve or disapprove, audit, and investigate the reports of such officers, but the power to procure an expert audit of the

county records. Section 8119, quoted supra, provides an instrumentality for the exercise of the latter power, viz., the services of the state examiner and inspector, and his duly authorized deputies. It becomes necessary to determine whether this instrumentality is exclusive. It has been said by this court:

" 'It is a familiar rule of construction, as laid down in the syllabus of United States v. Weld, McCahon, 185 (Kan. Dassler's Ed.) 591 (Fed. Cas. No. 16,660) that "When one person, or class of persons, is named in a power of attorney, or an act of the lawmaking power, as being authorized to do a certain thing therein named, all other persons are thereby excluded from doing the same thing as effectually as if they were positively forbidden.' " State ex rel. Haskell, Governor, v. Houston et al., 21 Okl. 782, 97 Pac. 982; Osage & Oklahoma Co. v. Millard (not yet officially reported) 145 Pac. 798.

"With reference to the power of the county board to employ agents, Cyc. vol. 11, p. 473, lays down the general rule as follows: 'With these limitations, county boards or courts have power to appoint such agents, officers, and servants as may be required for county purposes, and which are not otherwise provided by law or by the state Constitution.' (Emphasis ours.) Chase v. Board, 37 Colo. 268. 86 Pac. 1011, 11 Ann. Cas. 483; Stringer v. Franklin County, 58 Tex. Civ. App. 343, 123 S. W. 1168; Wilhelm v. Cedar Co. 50 Iowa, 254; Ringgold Co. v. Allen, 42 Iowa, 697.

"In the case of State v. Goldthait, 172 Ind., 210, 87 N. E. 133, 19 Ann. Cas. 737, the Supreme Court of Indiana said: 'A contract with a county for the performance by a third person of duties which are imposed by law on a public officer is void as against public policy.'

"In the case of Stringer v. Franklin Co., supra, the Supreme Court of Texas said: 'Where the law imposes on an officer the performance of acts as a part of his official duties, the commissioners' court of the county is without authority to contract with any other person to perform such services.'

"It is said by the plaintiff in error that the law does not impose upon the state examiner and inspector the duty to audit the county records, except upon the request of the county commissioners, that such duty only arises upon such request, and that the making of such request lies in the discretion of the county board. Section 1556, of Revised Laws which was in force in the territory of Oklahoma, provides: 'The county attorney shall give opinion and advice to the board of county commissioners and other civil officers, of his county when requested by such board or officers, upon all matters in which the county is interested,' etc.

"In the case of board of county commissioners of Logan County v. Jones, 4 Okl. 341, 51 Pac. 565, in a discussion of the power of the county board to employ an attorney at

law to perform duties imposed by the statute upon the county attorney and Attorney General, referring to the statutes imposing such duties, it was said:

" 'By these statutes the Legislature has made ample provision for an attorney for both the county, and, in fact, each and every county, and the territory. It is the duty of the county attorney to perform all legal services for the county and territory within his county, and in cases in which the territory or county is interested which have been taken from his county on change of venue. It is the duty of the Attorney General to prosecute and defend all cases, civil and criminal, in the Supreme Court, where the territory is interested as a party. The Legislature has given to the county commissioners no authority whatever to employ any other attorney than the one who is employed by law to represent the public interests, and a contract made for such purposes is ultra vires and void.'

"In the case of Clough & Wheat v. Hart, 8 Kan. 487, quoted with approval by the Oklahoma territorial Supreme Court in the Jones Case, supra, holding a contract for the employment of an attorney to perform services for the county to be void, it was said:

" 'The county attorney is elected by the people of the county for the county. Gen. Stat. pp. 283, 135. He is the counsel for the county, and cannot be superseded or ignored by the county commissioners. His retainer and employment is from higher authority than the county commissioners. The employment of a general attorney for the county is not by law put into the hands of the county commissioners, but is by law put into the hands of the people themselves. The county attorney derives his authority from as high a source as the county commissioners do theirs, and it would be about as reasonable to say that the county attorney could employ another board of commissioners to transact the ordinary business of the county as it is to say that the county commissiners can employ another attorney to transact the ordinary legal business of the county. Both would be absurd. It is the duty of the county attorney to give legal advice to the county commissioners, and not theirs to furnish legal advice to  * * *  him.'

"In the case of Brome v. Cuming County, 31 Neb. 362, 47 N. W. 1050, the Supreme Court of Nebraska used this language:

" 'The Legislature has made ample provision for protecting the interests of the county and state by furnishing proper legal counsel. The statute having pointed out the mode of procuring counsel for the county, it is exclusive of all others. The services rendered by the plaintiff in error for which he claims compensation in this case was precisely what the law required the county attorney to perform. The

employment was without authoriy of law, and no recovery can be had.' See 11 Cyc. 472, and cases there cited.

\*     \*     \*     \*     \*     \*     \*     \*     \*

"The law, which created the office of state examiner and inspector, made it mandatory upon that officer, upon request of the county commissioners, or upon the order of the Governor at the request of a certain per cent of the voters of a county, to perform the duties sought to have been obtained of another in this case. It fixed his remuneration, to be paid out of the county treasury. It gave him official powers not had by any individual auditor, and fixed penalties for violations of his prerogatives. It required of him a large official bond for the faithful performance of his duties. It did everything necessary to make his office a co-ordinating instrumentality in the performance of the duty of the county commissioners to procure an audit of the county records. These actions of the legislative power were not without meaning; and it was evidently the intention that the created instrumntality should be used. It was necessary to vest somewhere the discretion to determine when the necessity of its use arises; and this discretion was vested in the county commissioners, and in the Governor, acting upon the petition of a per centum of the voters. It is the duty of the county attorney to give legal advice to the county officers, upon request of such officers; and yet it is held that, when the necessity arises, he must be called into service and cannot be supplanted. The call of the state examiner and inspector to the service of the county is based upon exactly the same condition—the request of the county officials. The predicate of co-ordination is the same as to both offices, and the conclusion necessarily is the same.

"Plaintiff in error cites the case of Board of Com'rs v. Davie, 27 Colo. App. 501, 150 Pac. 324, in which the Supreme Court of Colorado held valid, under the statutes of that state, a contract by county commissioners with a private individual to audit the county records, to the exclusion of the state examiner. That decision specifically stated that the examination of county records by the public examiner, as provided for by the statute of that state, was manifestly for the use of the state; that under the statute the expense of the examination was paid by the state; that the county commissioners were given no authority to direct the state examiner to make the audit; and that the commissioners were not bound by, nor charged with notice of, the report when made. That decision was based, also, upon a decision of the Supreme Court of California, upholding a contract for a similar audit by private individuals, the latter decision being based upon the fact that the law prescribed no other means by which the result could be accomplished. As already pointed out, our statute provides a means for the result, and the lack of statutory co-ordination between the office of the state examiner and the county authorities, which

existed under the Colorado statute, does not exist under our statute, but is specifically cured.

"In the case of Chase v. Board, 37 Colo. 268, 86 Pac. 1011, 11 Ann. Cas. 483, where the statutory co-ordination existed between offices, the Supreme Court of Colorado held to the principle we have laid down, in holding invalid a contract by the county with a tax ferret to list omitted property, upon the ground that this duty was vested in the tax assessor, saying:

"'If the power to do the very thing which this contract attempts to give to plaintiffs has been by statute conferred upon other public officers, as it is altogether plain has been done, certainly this negatives the existence of an implied power in the board of commissioners to do that thing.'

"Our statute gives to the county commissioners the authority to audit the accounts of county officers, and under certain circumstances they may require expert assistance. Where expert assistance is required, the statute has furnished it in the instrumentality of the office of the state examiner and inspector. The statutory instrumentality is sufficient to meet all requirements; and where the means provided by the statute are sufficient, there is clearly no implied authority to discard their use and contract for the use of other means  If the implied authority to use other means existed prior to the statute creating the office of state examiner and inspector, the plain creation of another sufficient statutory instrumentality is sufficient to work a repeal."

In Board of County Commissioners v. Brett, 32 Okl. 853, 124 Pac. 57, the following rule was stated:

"One who asks payment of a claim against a county must show some statute authorizing it or that it arises from some contract express or implied which finds authority of law. No claims are chargeable on a county treasury or can be paid therefrom, except such as the law imposes on the county or empowers it to contract for, either expressly or as a necessary incident, and no officer of the county can charge it with the payment of other claims, however meritorious the consideration, or whatever may be the benefit the county may derive from them; and where a statute prescribes that certain things shall be done at the expense of the county by certain officials of the county, or by persons designated by them, only such officials or persons designated can put the county to expense for such items."

See, also, State ex rel. Haskell v. Huston, 21 Okl. 782, 97 Pac. 982.

[2] The doctrine is otherwise stated in 2 Lewis, Sutherland's Stat. Const. p. 919, as follows:

"Where authority is given to do a particular thing and the mode of doing it is prescribed, it is limited to be done in that mode; all other modes are excluded. This is a part of the so-called doctrine of expressio unius est exclusio alterius."

[**3**]   Thus by Section 4798, supra, we find that the county commissioners had the power to have a complete and accurate index made of all instruments of record affecting real property by the county clerk of the county, and that when so directed it would be the duty of the clerk to prepare the index.   The rule of law thus made applicable is that the Legislature may prescribe the method for exercising the jurisdiction of the board of county commissioners, and where it prescribes the mode of procedure the rule is exclusive of all others and must be followed.   Ft. Scott v. W. G. Eads Brokerage Co., 117 Fed. 51, 54 C. C. A. 437; Allen v. Board of County Commissioners, 28 Okl. 773, 116 Pac. 175; State Board of Control v. Buckstegge, 18 Ariz. 277, 158 Pac. 837; Dolezal v. Bosteck, 41 Okl. 743, 139 Pac. 964; Putney Brothers Co. v. Milwaukee County, 108 Wis. 554, 84 N. W. 822; Smith v. Lamping, 27 Wash. 624, 68 Pac. 195.

The mode of procedure of the board being pointed out by the statute and the duty cast upon the clerk of preparing the index when so ordered by the board, it is immaterial as to whether compensation had been provided, or whether the commissioners were authorized to compensate the clerk for doing the work.

[**4, 5**]   In the cases of Delgado v. Romero, 17 N. M. 81, 124 Pac. 649, Ann. Cas. 1914C, 1114, and Ward v. Romero, 17 N. M. 88, 125 Pac. 617, we held that there was no presumption in law that a public official is to receive a salary, and that it was the duty of the public official, so long as he holds a public office, to perform the duties prescribed by law.   And in the case of State ex rel. Miera v. Field, 24 N. M. 168, 172 Pac. 1136, we held that where, by law, the duty of performing certain work is cast upon a designated county official for which compensation is provided by law, it is not competent for the board of county commissioners to employ other persons to do the work required of such county official and pay for such services.   But, as we have seen, the question of compensation is wholly immaterial, and

we are not required in this case to determine whether the board would be authorized to compensate the county clerk for doing the work.

Appellant cites the cases of Hoffman v. Board of County Commissioners, 96 Ind. 84; People ex rel. Ford v. Earls, 47 How. Prac. (N. Y.) 368; Boggs v. Caldwell County, 28 Mo. 586. These cases all upheld the power of the county commissioners to contract for the making of an index system, but in none of these states was there a statute in any wise similar to our own, and no duty was cast upon any county official of preparing an index. Whether the appellant might lawfully recover for indexes to instruments of record in the county clerk's office not affecting real estate is not before us for determination. Neither is the question as to the divisibility of the contract, and we do not pass upon either of these questions.

For the reasons stated, we hold that the court properly sustained the demurrer to that portion of the first cause of action which sought recovery for the preparation of the indexes of all instruments of record affecting real property in the county clerk's office of Grant county.

The second question for determination is as to whether the contract for the installation of the so-called "Beall standard classification and checking system" was ultra vires and beyond the power of the board of county commissioners to make. The agreement provided for the installation of this system as an instrumentality for the use of the tax assessor, and from the contract it was to be a complete and correct classification and index system of all lands located in Grant county, in such a manner 〈 system would be a complete and platted index and record of all taxable property in said county. And further,, quoting from the contract, "any and all irregular tracts of land, the boundaries of which are not established, shall be surveyed," and further the division into classes of said lands, as "waste lands, grazing lands, agricultural lands, mineral lands, town lots,"

with certain specifications or subclasses. All materials required were to be supplied at the expense of Fancher & Co.

In a consideration of the question, and arriving at its solution, we must first look to the statutory provisions in this state.

Section 5434, Code 1915, made it the duty of the board of county commissioners of the several counties of the state to meet the second Monday in February of each year and proceed to ascertain the true value of property of different classes subject to taxation within their respective counties, with certain exceptions not material here.

By Section 5436 it is made the duty of the assessor of each county to list all such property for taxation at the valuation fixed by the board.

By Section 5437 it is made the duty of the county assessor to fix the valuation for the purpose of taxation of all property contained in the schedule filed by the taxpayer, or of which he may obtain knowledge in any other way.

By Section 5454 it is made the assessor's duty to assess to "unknown owners" property the names of whose owners cannot be ascertained by him, and in all such cases to obtain such information as is required in Section 5437 from actual personal inspection.

By Section 5455 it is made his duty to make such list according to the best information he can obtain if any person fails to render a true and complete list.

By section 5456 is provided he shall not knowingly fail to assess property, of which he may obtain information otherwise than by the property return, or which may be called to his attention by any person.

By Section 5459 it is provided that he shall classify (in co-operation with the county board) all lands according to value.

By Section 5466, to list any omitted property if he discovers any before the delivery of the tax rolls to the treasurer.

By Section 8, c. 54, Laws 1915, to place on the roll omitted and incorrectly or inadequately described property as certified by the state tax commission.

By Section 5464 the assessor is required to attach to his assessment roll the following oath:

"I, —— assessor of the county of ——, state of New Mexico, do solemnly swear that during the whole time allowed by law to make this assessment, I have made diligent inquiry and examination to ascertain all the property within said county subject to taxation, and that I have assessed it on the assessment books equally and uniformly to the best of my judgment, information and belief; and that I have faithfully complied with all the duties imposed upon the assessor by the revenue laws of the state; and that I have not imposed any unjust assessment, through malice or ill will, nor allowed any one to escape a just and equal assessment, through favor or reward."

County commissioners as taxing and equalizing authorities have the following duties to perform:

(a) To ascertain and fix the value of property according to the different classes subject to taxation.

(b) To obtain and pay for certified copies of the field notes and plats of township surveys, showing all entries to which title or right to title has been acquired from the government, in order to facilitate the accurate description of lands and real estate, and for the better assessment and collection of taxes.

(c) To classify (in co-operation with the assessor) all lands according to their value and to assess the same for taxation.

(d) To revive, correct, and complete the assessment rolls, as a board of equalization, at its June meeting, to supply omissions in the rolls, and increase, diminish, and otherwise alter or correct any assessment or valuation for the purpose of equalization.

The duties and powers of the state tax commission, material to the question, are as follows:

(a)  To increase or decrease the total tax valuation in any county, if more or less than as shown by the assessment roll.

(b)  To ascertain whether property in any county has been omitted from the roll, in whole or in part, or inadequately described, and certify the fact to the county assessor, who shall place it on the roll accordingly.

,Appellant contends that the contract in this case can be sustained for the following reasons, quoting from their brief:

"The assessor's labors are clearly haphazard in respect to the enrolling of property not returned. But he is permittcd to discover omitted property by chance and to use such information concerning it as may come to him fortuitously. He may of his own initiative make search and investigation, but is not bound to do so. The county hoard may supply him the other information, and this it has sought to do by the contract before the court.

"The county board is not restrained by any law from exercising its general powers, for public in'erest, to get all taxable property on the rolls. To ascertain and fix values so as to determine the levy, it must have all· possible property before its eye, whether on the roll or off, and may take such measures as seem good for the purpose, as the Beall classification and checking system. To classify lands the data thus made available it is entitled to have and use. As an equalization body, it requires such information for purposes of revision, it may supply such information to the assessor. Section 5457 does not forbid other media for discovery of taxable real estate.

"But the tax commission is empowered and required to cause omitted property to be placed upon the roll or ill-'described property to be well described. This obligation is set in motion, however, only after the primary and secondary officers have completed their work. There is, therefore, no exclusive, original duty upon it in this respect. It is but an ultimate board of reviewers."

They concede that it is beyond the power of the county board to contract for services, the performance of which is by law cast upon a public official, but contend, as we understand it, that no absolute duty is cast

upon either the county assessor, or the board of county
commissioners, to search for omitted property, and that
the state tax commission has no original duty in the
premise, but only a secondary duty, after the rolls are
made out and delivered to it for review and correction.
That while there is a permissive right on the part of the
assessor and the county treasurer to place upon the tax
rolls omitted property, it is not made the duty of these
officials to search out and find such property, and that
it is within the power of the board to contract for the
installation of this system, which was designed to aid
the county assessor in getting upon the rolls all omitted
property in the county. It is not contended that it was
not the duty of the county assessor to correctly describe
the property which he placed upon the tax rolls, be-
cause such is clearly his duty.

Appellants to support their contention rely principal-
ly upon the following cases: Pacific Timber Cruising
Co. v. Clark County (D. C.) 233 Fed. 540; Burnett v.
Markley, 23 Or. 436, 31 Pac. 1050; Fleener v. Litsey,
30 Ind. App. 399, 66 N. E. 82; Disbrow v. Cass County,
119 Iowa, 538, 93 N. W. 585; Shinn v. Cunningham,
120 Iowa, 383, 94 N. W. 941; Garrigus v. Howard
County, 157 Ind. 103, 60 N. E. 948. We will first re-
view these cases.

The case of Pacific Timber Cruising Co. v. Clarke
County, supra, was a decision by the District Court for
the Western District of Washington. There, a contract
was entered into with a private individual to cruise and
estimate the timber upon lands in Clarke county for the
purpose of aiding the assessor in placing a just valu-
ation upon the same. It was there contended that the
contract was beyond the power of the commissioners,
because they were trespassing upon the functions of the
county assessor in that the work was work which should
be done by that official. The power to contract was up-
held under the authority of Burnett v. Markley, supra,
and Nelson v. Troy, 11 Wash. 435, 39 Pac. 974, upon the
theory that the county commissioners were given the
care of the county property and the management of

the county funds and business, and such other powers
as are or may be conferred by law, and that the legis-
lative policy of the state of Washington has been to
allow the commissioners full scope in the administrative
power, even though not expressly granted. The ques-
tion as to whether the duty to do the thing contracted
for was by the law of Washington cast upon the county
assessor was not given proper consideration. This is
shown by a later case decided by the Supreme Court of
Washington. Northwestern Improvement Co. v. McNeil,
100 Wash. 22, 170 Pac. 388. The court said:

"Judge Neterer upheld a similar contract in Pacific Timber
Cruising Co. v. Clarke County (D. C.) 233 Fed. 540, finding
warrant for his holding in the general powers of the com-
missioners (Rem. Code, subd. 6, § 3890); and in the fact
that the commissioners sit as a board of equaliation (Rem.
Code, §§ 9200-9207). Judge Deitrich having a similar con-
tract, and a statute to all intents and purposes the same as
our own, held the contract to be ultra vires.

"It must be admitted that the law in so far as we find it
in existing statutes, and as it may be gathered from a con-
sideration of our political system as it is revealed in the
Constitution, proceeds upon the theory that the county as-
sessor is a competent and qualified person to make assess-
ments upon any and all kinds of property, either by his own
act, or through the instrumentality of competent persons,
whom the law gives him a right to select and qualify as
deputies. It may also be admitted that with the develop-
ment of the resources of our state, undeveloped coal and
timber lands have become of great value; that the average
man is not qualified to fix a value upon property where such
valuation rests in expert opinion; and that such expert
opinion cannot be obtained at a cost equal to a deputy's
salary.

"The office of county assessor is created by law. Rem.
Code, § 3971. The duties of the assessor are not defined
specifically in the act creating the office, but generally in
the chapter devoted to the subject of taxation. Rem. Code,
title 76. The assessor is enjoined to and makes undertaking
that he will 'diligently, faithfully and impartially perform
the duties enjoined on him by law' (Rem. Code, § 3972),
and when he 'deems it necessary to enable him to complete
the listing and the valuation of the property of his county
within the time prescribed by law, may appoint one or more
well-qualified citizens of his county to act as his assistants
or deputies.' The deputies are required to make oath that
they will 'perform all the duties enjoined upon, vested in. or
imposed upon assessors.' Rem. Code, § 3973. The assessor
and his deputies are given full power to administer oaths,
and to make all due inquiry to lead to a proper understand-

ing of the value of property of every kind.    Rem. Code, §§ 9102½, 9105, 9129, 9130.  Whatever may be the fault of the system, it is certain that it was adopted by the Legislature as a complete and supposedly ample system and with no intent of dividing the duty imposed upon the assessor with the board of county commissioners or of granting the commissioners a supervisory control over the assessor."

### And further on in the same opinion it is said:

"In the final analysis this case comes down to one question:   Whether the county commissioners, however necessary a thing may seem to be, have the power to appoint a private individual to do a thing, or perform a duty, which the law imposes upon one of the regular county officers—one who is charged with the doing of the very thing sought to·be accomplished by independent contract with a stranger to the county.  If this contract were to be upheld, the county commissioners might, by entering into one or many contracts, entirely usurp the powers of the county assessor and functions of his office on the theory that he, or they, were incompetent to make valuations on any one, or all classes of property; or it would enable them under the guise of their powers as members of the board of equalization to gather information and fix the values independent of the assessor. If they would have such power, they would have power to enter into a contract permitting the assessor and treasurer each to obtain an expert opinion and a valuation so that each member of the board of equalization could act independently and upon his own advices.  It would enable the board, if it conceived the notion that the assessor, being a farmer, had no personal knowledge of the value of a mercantile business, to hire an expert for the valuation of all merchandise stocks; or, if the assessor be a merchant having no knowledge of the value of farm lands and live stock, to hire an expert to furnish a list and valuation of such property; or coming closer to the case at bar, if the assessor were a man having a practical and technical knowledge of coal lands and coal mines, being himself engaged in that business, the commissioners might, under the pretense of serving county funds and county business, and entertaining a belief that having a direct interest, the assessor would not make a fair valuation, appoint an expert to furnish its members· such valuation upon which it might, irrespective of all discretion on the part of the assessor, make the assessment indirectly (the members of the board being a majority) through the board of equalization."

The court refused to sustain the validity of the contract.

In the case of Dexter Horton Trust & Savings Bank v. Clearwater County, 235 Fed. 743, in a decision by federal District Court of Idaho, which involved a con-

sideration of the statutes of Idaho, the judge refused to follow the decision by Judge Neterer and held to the contrary. That was a case in which a private individual has been employed to cruise timber lands for the purpose of assisting the county assessor in valuing the same. The Idaho statute was similar to that of Washington. The court said:

"The record here leaves no doubt that the primary purpose for which the cruise was made was for the assessor's use. The Constitution of the state (Section 5 of Article 18) provides for the election biennially of a county assessor, whose duty it is to value all property in the county for assessment purposes. Section 2119 of the Revised Codes, as amended in 1913 (Session Laws, p. 474), authorizes the board of county commissioners to empower the assessor to appoint such clerical assistance and such deputies as the business of the office may require, and to fix their compensation. It is further provided, however, that such power may be exercised only upon the application of the assessor after 30 days' public notice. If, after such notice, upon a hearing, at which any taxpayer may appear in opposition, the board finds an existing necessity, it may grant the application.

"Now, what reason can be assigned for ignoring this method, and, by resorting to the one here employed, depriving the taxpayers of the statutory right to be heard? Admittedly no sudden emergency had arisen. Assuming that a cruise was needed, why could it not as well 'have been made under the direction of the assessor, by qualified deputies appointed for that purpose?"

This case was carried to the Circuit Court of Appeals (248 Fed. 401, 160 C. C. A. 411) and was affirmed. The court said:

"The statutes above referred to are but part of the scheme for gathering the lists of property subject to taxation and providing for the valuation thereof for taxation purposes. It is urged that the acquisition of the information which the assessor must 'have in ·order to make a classification and valuation is merely to qualify the assessor to perform properly the official function, and that the valuation only is the official act. The weakness of this argument is apparent, we think, when we consider the scope of the duties of the assessor as defined by the statutes. They make it obligatory upon each official to classify, and then to determine, as near as possible, the full cash value of the property subject to assessment in his county. This obligation to make classification cannot be lost sight of, and carries with it the inseparable duty to acquire enough information to be able to arrange the property lists intelligently and as prescribed by law. He can always refer to the taxpayer's statement made

under Section 16 of the statutory provisions.   Primarily, no
one except the assessor is responsible for the classification;
and when classification is had, all of course.for purposes of
assessment, the assessor alone is responsible for determining,
as near as practicable, what the full cash value of the prop-
erty may be.   Thus in assessing of property there are two
steps, one the listing, the other the estimating or valuing—
and while one is the complement of the other, both ,are
essential in making an assessment.   Cooley on Taxation, p.
596.   In Bloomquist v. Board of County Commissioners, 25
Idaho, 284, 137 Pac. 174, the Supreme Court of Idaho said
that property must be assessed; 'that is, the property must
be listed for taxation.'   Furthermore, the court held that,
under the Constitution of Idaho, the duty of assessment was
upon the assessor, and that, the Constitution having pro-
vided a scheme for the 'mechanical administration of the
laws of the state,' the Legislature could not substitute an-
other method therefor.   It might well be that, in order to
enable the assessor to reach the full cash value of timber
lands, it would be of great aid to him to be furnished with
a cruise by experts of the timber upon timber lands; it might
also well be that it would be of great assistance to him to
have expert mining engineers furnish reports concerning the
ore bodies in the mines situate in his county, or that he
would be given greater assistance by having expert reports
upon the value of agricultural lands.''

It will thus be seen that the force and effect of the
decision relied upon by appellants is practically de-
stroyed.

The case of Burnett v. Markley, supra, is more nearly
in appellant's favor.   In that case it was held that
under the statute giving to the county court the general
care and management of the county property, funds,
and business of the county, the county court might
make a valid contract for preparing a list of the real
estate of the county for the purpose of the tax rolls.
The court held that such a contract was merely in aid
of the assessor, and under it the county court could not
usurp or interfere with the duties of the assessor, but
might assist him in the discharge of the duties of his
office and thereby enable him to prepare a list and
assess property for taxation.   The court evidently con-
sidered it to be the business and duty of the county as
a corporate body to secure the placing upon the tax
rolls of all the property in the county.   In other words,
it was the duty of the county as a corporate body to
collect taxes.   That case is distinguishable, however,

from this in that under our statutes, as we shall later see, a specific duty is cast upon the state tax commission to search for omitted property and have it placed upon the tax rolls.

In the case of Fleener v. Litsey, 30 Ind. App. 399, 66 N. E. 82, it was held that the duty to search for omitted property was not cast upon any officer, and that under the provisions of the statute the county commissioners were authorized to employ a person for the purpose, and that seems to have been the uniform holding of the Appellate and Supreme Court of Indiana until the case of State ex rel. Goldthait, 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. 737, was decided. Prior to the enactment in Indiana of Section 10277, Burns' Ann. Stat. Ind. Revision of 1914, which statute was enacted in 1891, no duty devolved upon any official to search for omitted property, and it was uniformly held that, as stated, the county commissioners were authorized to employ persons to perform this service. In that year there was enacted a statute creating the office of county assessor, and it was made his specific duty to |at any time during the year list upon the proper assessor's book in the office of the county auditor any omitted property which he might discover and which should be assessed, and it was provided that the proprety so discovered should be placed upon the tax duplicate by the auditor and the taxes extended and collected as in other cases.

In the case of State ex rel. Goldthait, supra, the court said:

"The answer discloses that the same services, setting them out in detail, were performed by relators as are required of the county assessors, and it is settled that this may not be contracted to be done iby third persons, as a matter of public policy, and that such contract is ultra vires."

The court also said:

"It. cannot be presumed that the Legislature intended a useless and meaningless thing when it defined the duties of county assessors, and specially committed to them the duty of searching for omitted taxes. That duty is a retrospective

one, for we have seen that it is held that they may go back óf the current year in that search, and, if they may do so, then in the public interest that amounts to a mandate that they shall do so. It would be an anomaly to say that they may do so, but are not obliged to do so. Mechem, Public Officers, § 593; City of Logansport v. Wright (1865) 25 Ind. 512. Or, take another case: Suppose the officer in his examination discovers that there has been property omitted in former years, will it be contended that he has any choice in the matter? Is it not perfectly clear that he is bound to assess it, and put it upon the duplicate. He can have no choice as against his plain duty. His duty is mandatory, and he can waive nothing of that duty, as against public interest, and against public policy."

In Indiana the primary duty of assessing property devolves upon township assessors. These officials after performing their duty report to the county auditor, and this official makes up the tax rolls from the assessments made by the township assessors. This case is direct authority against the contention of the appellants here, because the primary duty rests upon the township assessors, and a secondary duty to search for omitted property and placing it upon the tax rolls rests upon the county assessor. Appellants argue that because the duty of the state tax commission here is a secondary duty that the county commissioners had the authority to employ private individuals to assist the county assessor in the discharge of his primary duty while assessing property.

Another case upholding the power of the commissioners to employ persons to search for omitted property is Von Rosenberg v. Lovett (Tex. Civ. App.) 173 S. W. 508. In Texas they have no statute apparently casting the duty upon any public official to search for and place upon the tax rolls omitted property, and the contract was upheld upon the theory that the county court had general supervision of the business of the county and was made a board of equalization and had intrusted to it the supervision of the assessment of property; but that case is distinguishable from the present case in that here we have a statute which casts the duty upon the state tax commission to search for and place upon the rolls omitted property, and this

without regard to the implied duty which rests upon the county assessor of doing so. The case last cited will be found very interesting, because it considers quite exhaustively all the decisions upon the subject.

Turning now to a consideration of further authorities against the right of the commissioners to make the contract in question, we find the case of Stevens v. County of Henry, 218 Ill. 468, 75 N. E. 1024, 4 L. R. A. (N. S.) 339, 4 Ann. Cas. 136. There the court refused to enforce a contract for the discovery of omitted property by a private citizen because under the Illinois statute the power to list and assess omitted property for taxation was vested exclusively in the board of review.

In the case of State v. Bd. of Com'rs of Dickinson County, 77 Kan. 543, 95 Pac. 393, 16 L. R. A. (N. S.) 477, a contract to search out and discover omitted property was held void because the statute of Kansas had "assigned the several steps in the system and procedure to designated officers of the townships and counties of the state. It has imposed upon certain officers the very duties which, by the contract in question, the county commissioners undertook to employ Moir to perform."

The case of Pierson v. Minnehaha County, 28 S. D. 534, 134 N. W. 212, 38 L. R. A. (N. S.) 261, is to the same effect.

The case of Chase v. Commissioners, 37 Colo. 268, 86 Pac. 1011, 11 Ann. Cas. 483, was based upon the statute which imposed the duty and conferred the power upon tax assessors to discover, as well as to assess omitted property. The court said:

"They are given power to discover, and furnish with facilities to bring to light, omitted assessable property."

In the case of House v. Los Angeles County, 104 Cal. 73, 37 Pac. 796, the commissioners employed private individuals to collect delinquent taxes. The court held the contract invalid on the ground that the whole course of proceeding from the levy of the tax to its collection

is confided to officers designated by the statute whose duties from the time and manner of their discharge are specified in the law.

In the case of Grannis v. Blue Earth County, 81 Minn. 58, 83 N. W. 496, a contract to search for omitted property was held invalid; the court saying:

"The Legislature has provided officers whose duty is to levy all taxes, officers to cause all property to be properly assessed and placed upon the tax rolls, and officers for the collection of such taxes. The county commissiners, as agents and officers of the county, have no authority over any of those officials with respect to the performance of their duties."

In Platte County v. Gerrard, 12 Neb. 244, 11 N. W. 298, a contract for services to enable the commissioners' court to place upon the tax list certain land which had been erroneously omitted therefrom was held void. The court said that the services contemplated in the contract were within the duties imposed by law upon the commissioners' court.

See, also, case notes to the cases of Pierson v. Minnehaha County, 38 L. R. A. (N. S.) 261; Stevens v. County of Henry, 4 L. R. A. (N. S.) 339; Chase v. Boulder County, 11 Ann. Cas. 483.

All these cases proceed upon the theory that where the duty to search for omitted property is by law cast upon a designated official, it is beyond the power of the board of county commissioners to employ a private individual to perform such services.

[6, 7] Turning to the statutes of this state, we find that, to say the least, an implied duty is cast upon the assessor to search for and place upon the tax rolls omitted property; that a positive duty is cast upon the state tax commission in this regard. Leaving out of consideration altogether the implied duty cast upon the county assessor, the duty resting upon the state tax commission, to search out and place upon the tax rolls omitted property, would preclude the county commissioners from employing private individuals to do this

work. The test is, not whether the duty is primary or secondary, but whether provision has been made by law for the accomplishment of the end, or the doing of the work, or the performance of the service, for the benefit of the public, in its organized capacity. In other words, has a public agency been created to do the work, or perform the service. Whether the agency created is as competent and capable as some private individual is to perform the service is not the subject of inquiry by the courts. This is a matter for legislative consideration exclusively.

Here the Legislature has created a state tax commission and has cast upon it certain duties, one of which is to search out all omitted property. Provision is made for certifying such omitted property to the county assessor and placing the same upon the tax rolls by that official, before the books are delivered to the county treasurer. Provision, which the Legislature deemed sufficient, was made for officers and agents of such tax commission, and the compensation thereof. To hold that, notwithstanding such provisions, it would be competent for the county commissioners to employ other agencies, at public expense, to do this work thus provided for, would be to subject the public revenues of the differrent counties to dissipation at the whim of the county commissioners.

As the contract in question can only be justified upon the ground that it was designed to aid the county assessor in placing upon the tax rolls omitted property and correctly describing property upon the tax rolls, and as this duty devolves by law upon public officials, the contract is ultra vires and void and the demurrer was properly sustained.

[8] The only remaining point which requires any consideration, in view of our determination on the main question in the case, is as to whether the county is estopped to resist the enforcement of the contract, or whether the contract, if valid, has been ratified, or whether there can be a recovery upon a quantum

meruit. The point, while suggested by appellants, is not pressed with much insistence. The rule is that where the invalidity of a contract with a municipal corporation is due to the entire lack of power of the corporation to enter into it, there can be no recovery upon a quantum meruit, and the municipal corporation can neither ratify the contract nor be estopped from pleading the invalidity. On the other hand, if the invalidity is due to some irregularity in the exercise by a public corporation of a grant of power to contract, frequently the instruments may be enforced through the application of the doctrine of estoppel or ratification or a recovery upon a quantum meruit may be had when the benefit is received by the corporation upon the theory of an implied contract. See Hagerman v. Town of Hagerman, 19 N. M. 118, 141 Pac. 613, L. R. A. 1915A, 904; and note to the case of Weil Roth & Co. v. Newbern, L. R. A. 1915A, 1009. The contract in question being beyond the power of the county to enter into, it necessarily follows that there can be no recovery upon a quantum meruit, or upon the theory of ratification or estoppel.

It follows from the foregoing that the trial court properly sustained the demurrer to the complaint, and its judgment will therefore be affirmed, and it is so ordered.

PARKER, J., and REED HOLLOMAN, District Judge, concur.

## On Rehearing.

PARKER, J. A rehearing has been allowed in this case. In the original opinion we held broadly: (1) That the contract for the Cott record index system was beyond the power of the county to make because it covered a duty and subject-matter committed by law to a public official of the county; (2) that the contract for the Beall classification and index system was likewise beyond the power of the county, because the same was designed to ferret out property omitted from the

Fancher et al. v. County Com., 28 N. M. 179

tax rolls, the duty to do which was already committed by law to the various taxing officers of the state and county; and (3) that where, as in this case, the invalidity of the contract is due to a lack of power to make it, there can be no recovery upon a quantum meruit, and the municipality cannot ratify the contract or be estopped from pleading its invalidity. Of the soundness of these propositions, after a re-examination of the whole case, we have no doubt, although they have again been presented by appellants.

[9] Counsel for appellants, however, do present a question which we expressly declined to decide in our former opinion, and it is as to the severability of the contract and the right of appellants to recover for portions of the services rendered. In regard to the Cott index it is to be noted that it was to be "a complete and correct index of any and all records of the county clerk's office, properly arranged according to the patented forms used in such system." The compensation agreed upon in the contract for the Cott index was "a sum equal to twenty-five (25c) cents for each and every entry indexed into said system."

The Beall classification and index system was to be "a complete and correct platted classification and index system of all lands located in said Grant county, New Mexico, and subject to taxation February 1, 1919, arranged according to the patented forms used in such system covering all taxable lands of the above date, in such manner that when complete said system will be a complete platted index and record of all taxable property located within said county, as may be found to be shown by the records of the United States Land Office or the records on file in the office of the county clerk of said county as being subject to taxation on above date." The contract contained further provisions concerning the survey, platting, and classification of the lands and the furnishing by the appellants of binders, index, tabs, platted sheets, etc., as might be required for the proper execution of the

agreement. The method of payment for the furnishing of the Beall classification and index system was as follows:

"For the furnishing and completing of Beall classification and index system a sum equal to thirty-seven and one-half (37½) cents for each and every entry worked into said system and the sum of ten (10) cents per square inch (drawn or printed surface) for all index sheets or plats necessary for the proper platting and classification of land—including master of index plats, and the sum of twenty-five cents per acre for all lands classified and worked into the plats of such system as to soil classification, and said classification to be made only upon request of county commissioners—and the sum of twenty-five cents for each and every town lot platted and worked into said system."

It is argued by counsel for appellants that this contract is a severable contract, and that, the matter of compensation for different units of the services to be rendered being fixed in the contract, they have a right of recovery for all items for which the county has power to contract. In so far as the items in the Cott index are concerned, it is pointed out that the contract provides for the indexing of all county records and it is not confined to the indexing of conveyances affecting real estate. It is consequently urged that there is a right of recovery for such items as do not concern real estate.

It may be stated generally that the intention of the parties making a contract is the controlling consideration in determining whether the same is severable or entire. This intention, when properly ascertained, will in all cases determine the question. In ascertaining the intention of the parties resort must necessarily be had to the terms of the contract in the first instance. If they clearly indicate the intention, the question is at once settled. But ordinarily the terms of the contract do not settle the question, in cases like this where many units of service are embraced in the contract. Resort may then be had to the nature of the subject-matter; whether the contract apportions the consideration to each of the items covered may be considered; whether the whole quantity, service, or thing, as a whole, is of

the essence of the contract; and perhaps other tests may be resorted to. Upon this subject, see 4 Page on Contracts (2d Ed.) § 2085 et seq.; 6 R. C. L. Contracts, § 246; 13 C. J. Contracts, §§ 525-530; Williston on Contracts, §§ 862, 863; Broxton v. Nelson, 103 Ga. 327, 30 S. E. 38; 68 Am. St. Rep. 97 and note; Huyett & Smith Co. v. Chicago Edison Co., 167 Ill. 233, 47 N. E. 384, 59 Am. St. Rep. 272 and note; Coleman v. Ins. Co., 49 Ohio St. 310, 31 N. E. 279, 16 L. R. A. 173, 34 Am. St. Rep. 565; Johnson v. Fehsefeldt, 106 Minn. 202, 118 N. W. 797, 20 L. R. A. (N. S.) 1069 and note. An examination of the contract in this case discloses certain strong and plain characteristics. In the first place, the contract for the Cott index calls for a complete index of all records in the county clerk's office. It is pointed out by counsel for appellee that a very large proportion of such records concern titles to real estate, either directly or potentially. Thus it is said that, aside from the deeds, real estate mortgages, trust deeds, location notices of mining claims, lis pendens notices, judgments, claims of mechanics' liens, and wills bequeathing real estate, which directly affects titles to real estate, and form the great bulk of the records in the offices of all county clerks, marriage certificates, commissions of notaries public, and birth and death certificates, also indirectly concern title to real estate, that the only remaining records are those of official bonds, bills of sale of personal property, and chattel mortgages. It is argued that, even if the county has power to contract for the indexing of the records of official bonds, bills of sale, and chattel mortgages, it is inconceivable that it would make such a contract separate and apart from a contract covering all of the records because of the relatively unimportant character of the subject-matter. With this argument we agree. The indexing of all the records must have been of the essence of the contract in the contemplation of the parties.

It is to be further noted that the consideration is entire. It was to be a sum equal to 25 cents for each entry, not a separate price for different portions of the

work.  The insertion of the price per unit of work in the contract was merely for the purpose of furnishing a measure whereby to compute the whole contract price. In such cases the contract is entire.  See 13 C. J., Contracts, § 528.

[**10**]  In regard to the Beall classification and index system the same considerations are applicable.    The consideration for this is entire.  The price of the various items composing the work are inserted merely as a measure whereby to compute the whole contract price. The whole system was designed, according to the terms of the conrtact, for the use of the tax assessor of the county.   The parties could have had, under the circumstances, no intention to furnish on the one side, or to receive on the other, anything less than a completed system.   They contracted for the whole, and the contract must be held to be entire.

There is a harshness about the result reached, as above, which must appeal to all fair-minded persons. The county sat by for nearly a year and saw appellants expend large sums of money for materials and labor under a contract which it had executed. If any principle of law could be invoked whereby a recovery by appellants could be had, it should, we feel, be applied.   But we know of no such principle.   The appellants contracted with a municipal subdivision of the state and were bound to take notice of the limitations upon its powers. They have no right of recovery upon the contract, nor upon a quantum meruit, or quantum valebat, because the contract is invalid and entire.   Their only remedy is to retake the property.    See 19 R. C. L. Munic. Corp. § 352; City of Bardwell v. Southern Engine & Boiler Works, 130 Ky. 222, 113 S. W. 97, 20 L. R. A. (N. S.) 110 and note.

It follows that the judgment of the district court was correct and should be affirmed, as we held in the first instance, and it is so ordered.

REED HOLLOMAN, District Judge, concurs.

RAYNOLDS, C. J., and BARNES, J., did not participate.